BLOOD, Appellant,

v.

NOFZINGER et al., Appellees.

[Cite as *Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–04–031.

Decided July 29, 2005.

548

Susan Blood, pro se.

Michael B. Jackson, for appellees.

Skow, Judge.

██ {¶ 1} Appellant, Susan Blood, brings this pro se [1] appeal from a grant of summary judgment in favor of appellees, Donald and Barbara Nofzinger, the estate of Donald Nofzinger, and the Nofzinger Family Trust. This is the third appeal in a lengthy litigation between the parties.[2]

---

1. "Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." *Meyers v. First Natl. Bank* (1981), 3 Ohio App.3d 209, 210, 3 OBR 238, 444 N.E.2d 412.

2. In the two prior cases, discussed infra, both Susan Blood and Robert Poturica Jr. were defendants. In this opinion, only Blood's participation is discussed.

### Facts and Prior Litigation

{¶ 2} In 1997, Susan Blood entered into a land contract to purchase a farm in Huron County (the "farmland") from Donald and Barbara Nofzinger. Blood intended to operate a horse-breeding business on the farmland. On January 26, 2000, the Nofzingers created the Nofzinger Family Trust ("the trust"), ostensibly for retirement planning. Donald and Barbara Nofzinger served as trustees. Blood alleges that the same year, the Nofzingers began negotiations with Hartland Township to sell a portion of the farmland that was the subject of Blood's land contract for a road extension project. A copy of the July 31, 2000 minutes of the Hartland Township Trustees' meeting reflects Donald Nofzinger's presence and states that the affected landowners were in favor of the project.

{¶ 3} On September 25, 2000, the Nofzingers filed a forcible-entry-and-detainer ("FED") action to remove Blood from the farmland. The Huron County Court of Common Pleas entered summary judgment voiding the land contract on the grounds of mutual mistake and declaring the parties to have a month-to-month tenancy. Thus, it found that Blood had overpaid the Nofzingers in "rent" and awarded her a judgment of $25,623.39; this represented the amount appellant had overpaid in rent based on the fair market rental value of the property. It also entered summary judgment in favor of Blood on the FED action, finding that cause of action had been waived since the Nofzingers continued to accept "rental" payments during the litigation.

{¶ 4} Blood appealed from that judgment, and this court affirmed. *Nofzinger v. Blood,* 6th Dist. No. H–02–014, 2003-Ohio-1406, 2003 WL 1464519. The Ohio Supreme Court declined review. *Nofzinger v. Blood,* 99 Ohio St.3d 1455, 2003-Ohio-3396, 790 N.E.2d 1219. The record contains no evidence as to whether, during these appeals, the Nofzingers or Blood filed to stay execution of the judgment awarded to Blood.

{¶ 5} On May 9, 2003, the Nofzingers filed another FED action against Blood. The trial court found that Blood had been properly served with the notice to vacate, found the Nofzingers to be entitled to a writ of restitution to the premises, and continued the matter for hearings on damages and Blood's counterclaims. Blood again appealed, arguing error with respect to her counterclaims and error in the Nofzingers' failure to name the trust as the true party in interest in the first action. *Nofzinger v. Blood,* 6th Dist. No. H–03–021, 2004-Ohio-2461, 2004 WL 1088386. We found that Blood's assignments of error related to her counterclaims were not properly before us. We also declined to address Blood's allegation of fraud in the Nofzingers' failure to join the trust as a party to the prior action, because that case was "not currently before this court on appeal"; further, because Blood had submitted no evidence that she had objected to the named parties in the trial court, we found that argument waived.

The matter was additionally found moot, because Blood "conceded during oral argument that she has no intention or desire to move back to the subject premises."

{¶ 6} On June 26, 2003, Donald Nofzinger passed away. His will, submitted to Huron County Court of Common Pleas, Probate Division, passed the majority of his assets to the trust upon his death. Blood submitted evidence of her attempt to collect her judgment from his estate. The total value of Donald Nofzinger's probate estate is little more than $10,000 in personal property; Blood stated in an affidavit that she was unsuccessful in this collection attempt.

{¶ 7} On July 8, 2004, the trust, Barbara Nofzinger acting as trustee, sold the farmland—apparently the portion not used for the road extension project—for $360,000.

{¶ 8} Blood also states in her affidavit that she attempted to satisfy her judgment for overpaid rent by attaching Barbara Nofzinger's automobiles. She found several automobiles belonging to the trust, but none belonging to Barbara Nofzinger individually. Since her judgment was only against the Nofzingers individually, no attachment actions were possible. Blood submitted title documents reflecting the Nofzingers' transfers of automobiles to the trust.

{¶ 9} Blood's current claim arises under the Uniform Fraudulent Transfer Act ("UFTA"), R.C. 1336.01 et seq. She claims that the Nofzingers fraudulently transferred property, including the farmland formerly subject to the void land contract, into the trust in anticipation of indebtedness to Blood. Blood further alleged that fraudulent transfers rendered the Nofzingers without assets and, therefore, rendered them collection-proof. Appellees' answer admitted that they had "not yet satisfied any previous judgment involving these parties * * *." In July 2004, Barbara Nofzinger paid $30,000 to the trial court, which the clerk of courts subsequently released in partial satisfaction of the prior judgment.[3] Appellees then moved for summary judgment, arguing, inter alia, that the payment rendered Blood's fraudulent transfer claims moot, that fraudulent conveyance could not be proven since Blood had been aware of the Trust's ownership in the prior action, and that the trust had been formed in consultation with an attorney for estate-planning purposes.

{¶ 10} The trial court granted summary judgment for appellees on two grounds: (1) appellant could not "prove as a matter of law the elements necessary to establish a claim for fraudulent conveyance" and (2) while acknowledging a remaining deficiency on the judgment owing, the matter was moot

---

3. Interest had accumulated on the unpaid judgment in the interim.

because Blood's judgment had been "substantially satisfied," and it would "serve no purpose to set aside the trust * * *."

{¶ 11} From that adverse judgment, appellant sets forth five assignments of error for review:

{¶ 12} "I. The Trial Court made an error in law granting summary judgment to defendants where questioned transfer of property is fraudulent as a matter of law.

{¶ 13} "II. The Trial Court abused its discretion and committed prejudicial error in granting summary judgment and refusing to declare rights not determined in CVH2000–821, particularly the right to have that judgment rendered against [the] true party in interest.

{¶ 14} "III. The Trial Court erred in granting summary judgment to defendants while refusing to recognize massive injuries resultant from the transfers thereby denying plaintiff [her] substantive right to [a] remedy at law for fraud and constitutionally protected access to the courts.

{¶ 15} "IV. The Trial Court erred in granting summary judgment to defendants where a question of intent has been raised, is essentially unanswered and granting of summary judgment on that issue is not only contrary to law it is also against the manifest weight of the evidence [sic].

{¶ 16} "V. The Trial Court erred in granting summary judgment to defendants while refusing to enforce the intent and letter of the Ohio Rules of Civil Procedure thereby violating plaintiff's civil and legal rights under U.S. Constitution Amendments V and XIV."

**Preliminary Errors**

{¶ 17} After discussing undisputed material facts, the trial court's judgment entry quotes R.C. 1336.04, the applicable fraudulent transfer statute. Immediately thereafter, and without citation to further authority, it concludes:

{¶ 18} "Plaintiff cannot prove as a matter of law the elements necessary to establish a claim for fraudulent conveyance. In this case the transfer occurred before Plaintiff was a creditor of the Defendants and before any suit had been filed. Plaintiff through her attorney was even aware of the transfer during the pendency of the suit and had raised the matter as an affirmative defense to the [prior FED] suit. The fact that Plaintiff did not file a motion to join the trust as a necessary party to the [former] lawsuit does not negate the fact that Plaintiff through her counsel was aware that the property was in the Trust's name. Where the creditor has knowledge of the debtor's transfer of the asset prior to becoming a creditor of the debtor, there cannot be a fraudulent transfer. * * * Even if the conveyance to the trust had been fraudulent, it would serve no

purpose to set aside the Trust where the judgment has been substantially satisfied from the proceeds of the sale of the land for which Plaintiff seeks to have the Trust set aside as its owner. The matter is moot."

{¶ 19} This judgment entry contains several incorrect statements of law. First, the UFTA no longer requires that the allegedly fraudulent transfer occur subsequent to the creation of a debtor/creditor relationship; it permits claims for transfers made with the intent to defraud future creditors. The plain language of R.C. 1336.04, which the trial court quoted extensively in its judgment entry, defines certain transfers as fraudulent even where the creditor's claim arose *"before or after* the transfer was made or the obligation incurred." (Emphasis added.) R.C. 1336.04(A). In the same fashion, appellees argue that the transfer of the subject property to the trust could not have been fraudulent because no litigation had commenced at the time of transfer, and Blood had yet to become a judgment creditor. This argument is also incorrect: R.C. 1336.04 refers to the attempt by the debtor to avoid a "claim" or a potential claim, not the execution of a judgment, *Colonial Guild, Ltd. v. Pruitt* (Apr. 4, 2001), 9th Dist. No. 00CA007696, 2001 WL 324377, at 10, and a "claim" may arise before litigation commences to enforce that claim. Thus, a debtor may make a fraudulent transfer in anticipation of a claim. For example, in *Pruitt,* the court rejected the defendant-debtor's argument that he lacked intent because the transfer was made five years before his creditor was awarded a judgment; so, too, the fact that the Nofzingers' transfer of property occurred two years before Blood was awarded her judgment is not dispositive on the issue of intent.

{¶ 20} As for the trial court's conclusion that appellant's fraudulent-transfer claims were moot by virtue of a partial payment toward appellant's judgment, "[i]t is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. ' "Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment." ' " *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 245, 551 N.E.2d 1249, quoting *Rauch v. Noble* (1959), 169 Ohio St. 314, 316, 8 O.O.2d 315, 159 N.E.2d 451, quoting *Lynch v. Lakewood City School Dist. Bd. of Edn.* (1927), 116 Ohio St. 361, 156 N.E. 188, paragraph three of the syllabus. The trial court failed to recognize that a "satisfaction of judgment" does not mean a "partial" or "substantial" satisfaction of judgment. There is no evidence in the record of a payment made toward appellant's judgment; however, the trial court's consideration of the matter and its statement that the judgment was only partially satisfied is sufficient for us to conclude that the matter is not moot. Moreover,

even if Blood's judgment had been satisfied, her UFTA claim could not have been moot; the UFTA provides remedies beyond setting aside certain transfers. See discussion below. Summary judgment for appellees on that basis was therefore improper.

{¶ 21} We also quickly dispose of appellees' contention that appellant was prevented from collecting on her judgment sooner only because of her "constant appeals" in the prior two cases. Essentially, appellees argue that they could not pay the judgment while those cases were pending in appellate courts. This contention is irrelevant to a fraudulent-conveyance claim. The judgment was due and owing from the date it was entered. The record contains no evidence that Blood or the Nofzingers filed for a stay of execution of judgment pursuant to Civ.R. 62. Only a stay of execution could have relieved the Nofzingers of their obligation to pay the judgment. "A judgment is final, effective, and imbued with permanent character when properly filed pursuant to Civ.R. 58. The judgment remains effective unless stayed pursuant to Civ.R. 62, reversed or vacated on appeal, App.R. 12, or superseded by another judgment." *State v. Suchy,* 6th Dist. No. L–02–1243, 2003-Ohio-3457, 2003 WL 21500205, ¶ 27.

{¶ 22} Another preliminary matter involves appellees' assertion that the prior litigation is res judicata and that appellant's claim for fraudulent transfer is an improper collateral attack on the prior judgment voiding the land contract. Litigation that resulted in a judgment and created a judgment-creditor/judgment-debtor relationship is not res judicata as to a subsequent claim that the debtor fraudulently transferred property to avoid paying the judgment. In other words, appellant was not required to add her claim for fraudulent conveyance to litigation that had not yet resulted in a judgment. Furthermore, a fraudulent-conveyance claim involves issues which were not actually litigated or decided in the prior actions. *Cordemex, S.A., De C.V. v. Dayton Importers Corp.* (Sept. 7, 1990), 2d Dist. No. 11489, 1990 WL 129289. Since this matter is neither moot nor precluded by the prior litigation, the trial court was bound to rule on appellees' motion for summary judgment by testing whether appellees had demonstrated the absence of genuine issues of material fact.

### Summary Judgment

{¶ 23} Appellant's first, third, fourth, and fifth assignments of error each address the trial court's entry of summary judgment on her fraudulent-transfer claim, so we address those jointly. As the moving parties, appellees bear the "initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under

Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 24} In addition to appellees' flawed arguments discussed above, appellees also argued in their motion for summary judgment that their transfer of property to the trust could not have been made with intent to commit fraud because they were made in consultation with an attorney for estate-planning purposes. Instead of pointing to specific places in the record supporting their assertions, appellees have instead submitted the affidavit of Barbara Nofzinger, which stated that the trust was formed for estate planning and denies any intent to commit fraud as to Blood or any other future creditor.

{¶ 25} "[A] moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. The assertion must be backed by some evidence of the type listed in Civ.R. 56(C) which affirmatively shows that the nonmoving party has no evidence to support that party's claims." *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 26} Identical evidence was advanced by the debtor in *Colonial Guild, Ltd. v. Pruitt,* supra. The debtor had transferred property five years before his creditor was awarded its judgment. The debtor submitted an affidavit stating that his property transfers were not made with the intent to defraud; the court held that insufficient to meet the debtor's *Dresher* burden. So, too, Barbara Nofzinger's affidavit contains only conclusory assertions, which are insufficient to demonstrate a lack of genuine issues of material fact as to the elements of Blood's claim.

{¶ 27} As for Blood's burden in opposition to appellees' motion for summary judgment, the trial court was required to construe the evidence in a light most favorable to the nonmoving party, determine whether any genuine issues of material fact exist, and determine whether reasonable minds could differ as to whether judgment should be entered against the nonmoving party. Civ.R. 56(C). If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E), which provides:

{¶ 28} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." See, also, *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264.

{¶ 29} An appellate court, reviewing a grant of summary judgment de novo, also examines the record in the light most favorable to the party opposing the motion. *Engel v. Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932, paragraph one of the syllabus. Any doubt must be resolved in favor of the nonmoving party, and evidence must be construed against the moving party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 30} Thus, the trial court was obligated to rule on appellee's motion for summary judgment by testing first, whether appellees could conclusively establish that appellant could not meet the elements of R.C. 1336.04, and second, whether appellant could raise an issue of material fact as to an element of R.C. 1336.04. Throughout, the trial court was obligated to draw all inferences from the evidence most strongly in favor of Blood.

**Elements of an R.C. 1336.04 Claim**

{¶ 31} R.C. 1336.04 allows a creditor two ways to establish a claim for fraudulent transfers. First, R.C. 1336.04(A)(1) requires a showing that the debtor had an actual intent to commit fraud in the transfer of an asset. It states:

{¶ 32} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

{¶ 33} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor * * *."

{¶ 34} The statutory elements are fairly straightforward. "[P]ursuant to R.C. 1336.04(A)(1), a creditor must show: (1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors." *Atlantic Veneer Corp. v. Robbins,* 4th Dist. No. 01CA678, 2002-Ohio-5363, 2002 WL 31230338, ¶ 13.

{¶ 35} Blood has established the first element: the Nofzingers have never disputed that the farmland was transferred to the trust in January 2000. There is also no dispute that Blood is a judgment creditor and was a future creditor at the time of the transfer. The parties strongly dispute the element of intent. Blood argues that the Nofzingers intended to breach their land contract and evict her from the farmland in order to better profit and thus made the transfer intending to evade a future debt; appellees assert that the trust was formed for estate-planning purposes only.

{¶ 36} While the creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1), Ohio has recognized that proof of actual intent will often be impossible to procure. *Wagner v. Galipo* (1994), 97 Ohio App.3d 302, 309, 646 N.E.2d 844, citing *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 480 N.E.2d 1121. Thus, direct evidence of fraudulent intent is not essential. Id. A creditor may still establish a debtor's actual fraudulent intent if the circumstances demonstrate "badges of fraud." Sound inferences from circumstances surrounding the transaction may also establish a badge of fraud. Originally sounding in common law, the traditional "badges of fraud" which accompany actual fraudulent intent are now statutorily defined:

{¶ 37} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

{¶ 38} "(1) Whether the transfer or obligation was to an insider;

{¶ 39} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;

{¶ 40} "(3) Whether the transfer or obligation was disclosed or concealed;

{¶ 41} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

{¶ 42} "(5) Whether the transfer was of substantially all of the assets of the debtor;

{¶ 43} "(6) Whether the debtor absconded;

{¶ 44} "(7) Whether the debtor removed or concealed assets;

{¶ 45} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

{¶ 46} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

{¶ 47} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

{¶ 48} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor." R.C. 1336.04(B).

{¶ 49} Consideration of actual intent to hinder, delay, or defraud is "not limited to" the statutory factors. R.C. 1336.04(B); *Aristocrat Lakewood Nursing Home v. Mayne* (1999), 133 Ohio App.3d 651, 665, 729 N.E.2d 768.

Whether fraudulent intent exists is to be determined based upon the facts and circumstances of each case. *Sanderson Farms, Inc. v. Gasbarro,* 10th Dist. No. 01AP–461, 2004-Ohio-1460, 2004 WL 583849, ¶ 41. If the party alleging fraud is able to demonstrate a sufficient number of "badges," an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent. *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.* (1993), 87 Ohio App.3d 644, 650, 622 N.E.2d 1113; *Aristocrat Lakewood Nursing Home,* 133 Ohio App.3d 651, 662, 729 N.E.2d 768; *Abood v. Nemer* (1998), 128 Ohio App.3d 151, 713 N.E.2d 1151. While the existence of one or more badges does not constitute fraud per se, *Atlantic Veneer Corp.,* supra, at ¶ 27, a complaining party is not required to demonstrate the presence of all badges of fraud; as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent. *Bank One, N.A. v. Plaza East* (Nov. 10, 1997), 10th Dist. No. 97APE02–184, 1997 WL 710664. But, see, *Crocker v. Hood* (1996), 113 Ohio App.3d 478, 681 N.E.2d 460 (plaintiff could not prevail where only two badges of fraud existed).

 {¶ 50} Once the burden has shifted, a defendant may rebut the presumption of fraud if he or she can demonstrate that the transfer was made in good faith and that "reasonably equivalent value" was paid by the transferee: "A transfer or an obligation is not fraudulent under division (A)(1) of section 1336.04 of the Revised Code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." R.C. 1336.08(A). Where there is a lack of "reasonably equivalent value" given in exchange, the defendant fails to carry the burden of proof, and intent to defraud the creditor is established. See *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio* (1987), 37 Ohio App.3d 162, 524 N.E.2d 915 ("if the trial court had charged the jury that the plaintiff had the burden of proving that the transfer was for fair consideration, that charge would have been prejudicially erroneous"); *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.,* 87 Ohio App.3d at 651, fn. 4, 622 N.E.2d 1113 ("the giving of reasonably equivalent value in the transaction is a 'defense' to prima facie case of actual intent to defraud under R.C. 1336.04(A)(1)"). The lack of a reasonable value given in exchange also establishes the eighth badge of fraud. R.C. 1336.04(B)(8). Testimony that a transfer of real property was made to a trust without receiving consideration for the transfer has established this badge of fraud. *Atlantic Veneer Corp.* at ¶ 37. Ultimately, the party asserting fraud must carry the final burden of proof. *Baker & Sons Equip. Co. v. GSO Equip. Leasing* at 651, 622 N.E.2d 1113, citing *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.* (1990), 65 Ohio App.3d 791, 585 N.E.2d 496.

{¶ 51} The trial court neglected to determine whether Blood had established, or offered any evidence establishing, any of the listed badges of fraud. Attached to appellees' motion is a document titled "Assignment of all Right, Title, and Interest in an Agreement for Land Contract Purchase." This document states that the Nofzingers, for "valuable consideration," assigned their interest in Blood's land-contract purchase of the farmland to the trust. However, no evidence indicates what the "valuable consideration" was. We find this evidence insufficient to carry appellees' summary judgment burden on the issue of whether the transfer was made for fair consideration. Even assuming, however, that this document is sufficient to sustain appellees' burden on summary judgment, the trial court was still obligated to determine whether, in opposition, Blood could raise a genuine issue of material fact. Reviewing this matter de novo, we may analyze whether each badge of fraud has been established by the record, or whether Blood has demonstrated a genuine issue of material fact as to particular badges. If Blood can demonstrate a sufficient number of badges of fraud, then the Nofzingers have the opportunity to demonstrate that their transfers to the trust were made for a reasonable value given in exchange.

{¶ 52} In contrast to claims involving an actual intent to commit fraud in an asset transfer, R.C. 1336.04(A)(2) permits claims for constructive fraud against future creditors. *Aristocrat Lakewood Nursing Home,* 133 Ohio App.3d at 667, 729 N.E.2d 768. Constructive fraud focuses on the effect of the transaction(s) and may exist even where the debtor has no actual intent to commit fraud. Id. As in *Aristocrat,* the trial court "does not mention the term 'constructive fraud' or even purport to apply R.C. 1336.04(A)(2) governing such claims. * * * [T]he trial court cannot simply ignore or 'decide not to decide' an issue." Id. at 660, 729 N.E.2d 768, quoting *Taylor v. Taylor* (1981), 2 Ohio App.3d 79, 2 OBR 87, 440 N.E.2d 823, paragraph one of the syllabus.

{¶ 53} A creditor may prove that constructive fraud occurs if no "reasonably equivalent value was received in exchange for the transfer" and if one of the following applies: "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." R.C. 1336.04(2)(a) and (b). "[F]acts that do not satisfy a claim of actual intent could still satisfy a claim under (A)(2)(b)." *Aristocrat,* 133 Ohio App.3d at 668, 729 N.E.2d 768.

**Evidence in the Record Raising Genuine Issues of Material Fact**

{¶ 54} First, transfers of property to the trust were transfers to an "insider." An insider includes a family or retirement trust when the transferors retain control over the trust and its property, act as trustees, or receive the

benefits of the trust. See *Atlantic Veneer Corp.*, 2002-Ohio-5363, at ¶ 44. The creation of such trusts is a "popular" method of effecting fraudulent transfers, and transfers to such trusts are "fairly easy" to set aside.[4] See Ohio Civil Practice (2002), Section 209.23. Donald and Barbara Nofzinger were the initial trustees of the Nofzinger trust, and Barbara Nofzinger remains a trustee. A "conveyance fee statement" from the Huron County Auditor shows that Barbara Nofzinger sold the farmland in her capacity as trustee. This is evidence that the Nofzingers retained control over the transferred property after the transfer. Thus, sufficient evidence establishes the first and second badges of fraud.

{¶ 55} Most notable is the presence of the third badge of fraud: whether the transfer was disclosed or concealed. Appellant submitted an affidavit from her attorney in the prior litigation, which states that he was aware that the Nofzingers were "no longer the true owners of the property and therefore not true parties in interest during the pendency of [the prior litigation] due to transfer of the property to the Nofzinger Family Trust and asserted this as an affirmative defense for my clients." We may not correct this matter, as it is not properly before us, as it was not properly before us in *Nofzinger v. Blood*, 6th Dist. No. H–03–021, 2004-Ohio-2461. Appellees argue, and the trial court held, that appellant's knowledge of the transfer during the prior litigation bars her claim. The trial court's judgment entry incorrectly assumed that the absence of the trust as a party to the action in which appellant obtained her judgment precludes a subsequent claim that transfers into the trust were fraudulent. The lack of joinder has no effect on Blood's UFTA claim. The lack of joinder is relevant insofar as it may evidence concealment as a badge of fraud. The Nofzingers initiated the prior action to eject appellant from the farmland in their individual capacity—although at that time the trust held all rights to the land contract, as evidenced by the document submitted by the Nofzingers. In their motion for summary judgment, appellees stated that the circumstances causing the exclusion of the trust as a party to the prior litigation are "unclear." Both the trial court and appellees neglect to address a relevant inference from these facts: The *Nofzingers* knew that the land contract and the subject property had been transferred to the trust, yet the *Nofzingers* failed to rectify the matter in that litigation by instituting the prior ejectment action in their individual capacities or by correcting the trial court.[5] Blood's affidavit contains an additional indication

---

4. The trial court's statement that "it would serve no purpose to set aside the Trust" incorrectly assumes that, pursuant to the UFTA, the entire trust must be set aside. Rather, only particular transfers found to be fraudulent are set aside and the value of the transfers used to satisfy creditors, to the extent necessary to satisfy the creditor's claim. R.C. 1336.07(A)(1).

5. {¶ a} When denying Blood's initial, earlier motion for summary judgment in this case, the trial court wrote:

of appellees' failure to disclose the true owner of the farmland; she states that after the transfer of the property to the trust, the Nofzingers continued to request payments on the land contract to be made in their names.

{¶ 56} That the value of Donald Nofzinger's probate estate totals little more than $10,000 in personal property provides some evidence as to his solvency after the transfer, the ninth badge of fraud. This is especially so, since the trust received proceeds of at least $360,000 from the sale of the farmland, formerly held in Donald Nofzinger's name. The statute, however, requires a court to determine whether the debtor became insolvent "shortly after" the transfer(s). Donald Nofzinger died in June 2003, two and one-half years after the creation of the trust. Although this evidence does not conclusively answer the question of whether he become insolvent "shortly after" the transfers were made, it is sufficient to raise a genuine issue of material fact as to this badge of fraud. "Insolvency" for UFTA purposes is defined by R.C. 1336.02(A),[6] and the trial court should have applied this definition to the evidence and withheld summary judgment if it found additional discovery necessary to determine Donald Nofzinger's assets "shortly after" his transfers to the trust.

{¶ 57} Regarding the eighth badge of fraud, that no consideration of a reasonably equivalent value was received for the asset transferred, evidentiary materials Blood submitted in opposition to summary judgment include Ohio Bureau of Motor Vehicles title transfers of a 1976 Triumph and a 1986 Ford from Donald Nofzinger to the trust. The titles show that the trust paid nothing for either car, and both transfers were made on February 4, 2000, shortly after the trust's creation. Two additional vehicle titles were also submitted as evidence; they reflect the trust's payment for each vehicle for monetary consideration. However, that two vehicles were transferred to the trust for no consideration is sufficient evidence to establish the eighth badge of fraud. As for the farmland, the asset upon which Blood focuses, the only evidence submitted is a document titled, "Assignment of All Right, Title and Interest in an Agreement for Land

---

{¶ b} "If the matters alleged by Plaintiff, which the Court has summarized, are true, then the failure of the Nofzingers to disclose to the Plaintiff the transfer of the property to a family trust and their failure to advise the Court that they were not the real parties in interest and that they had transferred their interest in the real estate to the family trust, which should have been joined as a necessary party to the lawsuit, could well constitute a plan to defraud creditors and this Court and may constitute grounds to grant Plaintiff relief."

6. {¶ a} R.C. 1336.02(A) determines when a debtor is insolvent for UFTA purposes:
{¶ b} "(1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation.
{¶ c} "(2) A debtor who generally is not paying his debts as they become due is presumed to be insolvent." See, also, *Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. No. 01AP–461, 2004-Ohio-1460, ¶ 44.

Contract Purchase." This document assigned the Nofzingers' interest in the land contract with Blood to the trust. It acknowledges that "valuable consideration" was received for the transfer; however, the document does not evidence or mention the amount of consideration. Thus, the eighth badge of fraud has not been established with respect to the farmland; however, given the other evidence, there remains a genuine issue of material fact as to this transfer for which further discovery may be had.

{¶ 58} Regarding the seventh badge of fraud, the removal of assets, it has been established by the automobile title transfers discussed above and the transfer of the farmland. Further discovery may also be had as to the remainder of the Nofzingers' transfers to the trust. Appellant's fifth assignment of error asserts that discovery was prematurely terminated; we need not address this argument where summary judgment is reversed and discovery may continue. Appellant's first, third, fourth, and fifth assignments of error are well taken insofar as appellees were improperly granted summary judgment.

**Damages**

{¶ 59} The UFTA provides not only for the setting aside of a fraudulent transfer to the extent necessary to satisfy a debt; a creditor may also obtain "any other relief that the circumstances may require." R.C. 1336.07(A)(3)(c). Other laws, including the common law of fraud, supplement the UFTA. R.C. 1336.10. The amount of damages recoverable will depend on the facts of each case and what is necessary to compensate the creditor for harm flowing from the fraud. As the *Aristocrat* decision explained, "it is well established that '[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom.' *Foust v. Valley-brook Realty Co.* (1981), 4 Ohio App.3d 164, 166, 4 OBR 264, 446 N.E.2d 1122; *Locafrance* [*U.S. Corp. v. Interstate Distrib. Servs., Inc.* (1983), 6 Ohio St.3d 198, 6 OBR 252, 451 N.E.2d 1222], syllabus ('Common-law remedies, including the law of fraud, may be applied when appropriate in fraudulent conveyance cases * * *'). In such a case, to the extent that the amount of the fraudulent transfer does not adequately compensate the injured creditor for its loss, it does not provide the appropriate measure of recovery." Id., 133 Ohio App.3d at 671–672, 729 N.E.2d 768.

{¶ 60} If appropriate, the trial court may also determine whether punitive damages and attorney fees are warranted. "Under Ohio law, punitive damages and attorney fees may be awarded when appropriate in fraudulent conveyance cases. * * * In order to recover punitive damages, a creditor must not only establish the underlying cause of action for the fraudulent transfer, but must also prove that the debtor acted with actual malice when making the

fraudulent transfer. \* \* \* A finding of actual malice requires proof that the debtor acted in the form of either: '(1) hatred, ill will, or a spirit of revenge, or (2) a conscious disregard for the rights of others that had a great probability of causing substantial harm.' " *Sanderson Farms, Inc. v. Gasbarro,* supra, at ¶ 57, quoting *Aristocrat,* 133 Ohio App.3d at 673, 729 N.E.2d 768. Further, this element has been termed conscious, deliberate, or intentional and requires the party to possess knowledge of the harm that might be caused by his behavior. *Sanderson* at ¶ 58. The *Sanderson* decision also found attorney fees appropriate where malice is found and punitive damages are awarded.

{¶ 61} In this case, Blood has alleged additional harm flowing from her inability to collect upon her judgment. If Blood prevails on the merits, not only may the trial court set aside the particular transfer found fraudulent, but Blood may also submit materials evidencing such damages for evaluation pursuant to these standards.

## Second Assignment of Error

{¶ 62} As in Blood's prior appeal, *Nofzinger v. Blood,* 6th Dist. No. H–03–021, 2004-Ohio-2461, she asks us to reexamine the prior failure to join the trust as the "true party in interest" in the land-contract litigation. As before, this matter is not properly before us. This assignment of error is not well taken.

## Conclusion

{¶ 63} Further commentary on the evidence in the record is not necessary. The record contains evidence relating to at least six badges of fraud: the first, second, third, seventh, eighth, and ninth. As in *Aristocrat,* 133 Ohio App.3d at 667, 729 N.E.2d 768, the trial court did not make the required findings necessary pursuant to R.C. 1336.04(B). "These findings are necessary to a proper allocation of the burden of proof." Id. The guidance we have given to the trial court on weighing evidence for summary judgment purposes should suffice; both parties have an additional opportunity for discovery and additional opportunities to add material to the record. After weighing the evidence, if the trial court determines that Blood has presented sufficient indicia of badges of fraud, appellees may rebut any presumption of fraudulent intent by evidence discussed here. The trial court should also weigh the evidence in the record while applying the constructive fraud provisions of R.C. 1336.04.

{¶ 64} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas is hereby reversed, and this matter is remanded for further proceedings consistent with this decision and judgment entry. Appellees are ordered to pay the costs of this appeal for which sum judgment is rendered

against appellees on behalf of Huron County and for which execution is awarded. See App.R. 24.

Judgment reversed
and cause remanded.

MARK L. PIETRYKOWSKI and DENNIS M. PARISH, JJ., concur.