[Cite as *Ohio Pickling & Processing, L.L.C. v. Vella*, 2017-Ohio-7276.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ohio Pickling & Processing, LLC, et al.　　　　Court of Appeals No.  L-16-1276

　　　　Appellants　　　　　　　　　　　　　Trial Court No. CI0201503902

v.

Mary Jo Vella, et al.　　　　　　　　　　　**DECISION AND JUDGMENT**

　　　　Appellees　　　　　　　　　　　　　Decided:  August 18, 2017

* * * * *

Cary Rodman Cooper and David Rodman Cooper, for appellants.

Kathryn Wood, J. Benjamin Dolan, and Jonathan R. Secrest, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellants, Ohio Pickling & Processing, LLC (hereinafter "Ohio Pickling"),

Ovidon Manufacturing, LLC (hereinafter "Ovidon"), and EllBee Transport, Inc.

(hereinafter "Ellbee"), an affiliated company of Ohio Pickling and Ovidon, appeal from

the October 18, 2016 judgment of the Lucas County Court of Common Pleas granting partial judgment on the pleadings on appellants' fraudulent transaction claim. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellants assert the following single assignment of error:

Appellants expressly alleged in their complaint that appellees had transferred the proceeds of their alleged theft of appellants' property into a home purchased by appellee Mary Jo Vella (Ms. Vella) in Las Vegas, Nevada with the intention of defrauding appellants. This recitation stated a fraudulent transfer claim under governing Ohio law and should have withstood appellee's motion for judgment on the pleadings. The trial court erred in granting appellee's motion for judgment on the pleadings.

{¶ 3} In 2015, appellants filed an action against appellee, Mary Jo Vella; her sons, Brian, Joshua, and Joseph Vella, Brian Pellizzaro, and James MacLean, employees of Ohio Pickling; and four companies created by Rick and Mary Jo Vella: Hurricane Steel Doors Buildings and Farm Equipment, LLC, Ed's Garage Doors, Sales, and Service, LLC, and Full Rut Ranch, LLC. Appellants alleged Rick Vella, husband of Mary Jo Vella, and father of Brian, Joshua, and Joseph Vella, had committed acts of misconduct as the Vice President and General Manager of Ohio Pickling (claims against Rick Vella are being pursued in a separate action). Appellants alleged four causes of action against the defendants alleging they were part of a conspiracy with Rick Vella to use appellants'

2.

employees, property, and equipment to operate the business of the Vella corporations and convert the property of appellants and funds owed to them.

{¶ 4} In 2016, appellants filed a second, separate action (later consolidated with the first action) against appellee, Mary Jo Vella, pursuant to R.C. 1336.04, to void or set aside a purchase of property by Mary Jo Vella in Nevada. Appellants alleged appellee fraudulently purchased the property with money acquired through the Vellas' conversion of appellants' assets in order to defraud appellants from recovering damages in the first action.

{¶ 5} While appellants had yet to discover the full extent of Rick Vella's activities, they asserted in their complaint that he had used the property and employees of Ohio Pickling (who aided and abetted Rick Vella's actions) to unload, store, and sell steel scrap belonging to Hurricane Steel, a company owned by Rick and Mary Jo Vella; he sold Ovidon steel scrap held by Ohio Pickling in its "Okay to Move" area as Hurricane steel scrap and keeping the proceeds; he used Ohio Pickling credit cards for personal use (along with Mary Jo Vella); he failed to perform the duties required as an employee of Ohio Pickling, as did Mary Jo Vella and the other individual employees named in the suit; and he failed to correct Joseph Vella's conversion of freight commission payments due EllBee to the benefit of himself and Hurricane Steel. Appellants assert Rick Vella converted approximately $544,000.

{¶ 6} Appellee Mary Jo Vella moved for partial judgment on the pleadings relating solely to the fraudulent transfer claim. Appellee alleged that the claim should be

3.

dismissed on the grounds that the court lacked personal jurisdiction over her because she is a resident of Nevada and lacks sufficient contacts with Ohio and appellants failed to state a claim because they alleged only legal conclusions without any supporting facts or allegations.

{¶ 7} Civ.R. 12(C) permits the trial court to award judgment based solely on the pleadings after the time for filing the pleadings has closed if the court:  "(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief."  *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996), citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99, 616 N.E.2d 519 (8th Dist.1992).  The trial court must consider only the allegations in the complaint and presume the truth of the facts set forth in the complaint.  *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973).  There must be no material question of fact and the movant must be entitled to judgment as a matter of law.  *Pontious* at 569-570, citing *Burnside v. Leimbach*, 71 Ohio App. 3d 399, 402-403, 594 N.E.2d 60 (10th Dist.1991) and *Peterson*.  Therefore, we apply a de novo standard of review on appeal.  *McMullian v. Borean*, 167 Ohio App.3d 777, 2006-Ohio-3867, 857 N.E.2d 180, ¶ 8 (6th Dist.).

{¶ 8} In consideration of a motion to dismiss, "the principles of notice pleading apply and 'a plaintiff is not required to prove his or her case at the pleading stage.'"

4.

*Piispanen v. Carter*, 11th Dist. Lake No. 2005-L-133, 2006-Ohio-2382, ¶ 10, quoting

*York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991). That

same concept applies to motions for judgment on the pleadings. *Kerr v. Logan Elm*

*School Dist.*, 4th Dist. Pickaway No. 14CA6, 2014-Ohio-5838, ¶ 13; *Golden v. Milford*

*Exempted Village School Bd. of Edn.*, 12th Dist. Clermont No. CA2008-10-097, 2009-

Ohio-3418, ¶ 26. If the plaintiff has alleged "a set of facts, consistent with the plaintiff's

complaint, which would allow the plaintiff to recover, the court may not grant a

defendant's motion to dismiss." *York* at 145. *See also Mangelluzzi v. Morley*, 2015-

Ohio-3143, 40 N.E.3d 588, ¶ 12 (8th Dist.).

{¶ 9} R.C. Chapter 1336 applies "when a transfer of property will prevent a

creditor from obtaining satisfaction of an underlying debt." *Poss v. Morris*, 11th Dist.

Ashtabula No. 2015-A-0009, 2015-Ohio-5337, ¶ 26. There are four possible claims a

creditor may assert under R.C. 1336.04 and 1336.05. *Id.* In their complaint, appellants

referenced R.C. 1336.04(A)(1) and (2).

{¶ 10} Pursuant to R.C. 1336.04(A)(1) and (2), to plead a cause of action for

fraudulent transfer, a creditor must allege he has a claim against the defendant which

"arose before, or within a reasonable time not to exceed four years after," the defendant

transferred or incurred an obligation which was done (1) "[w]ith actual intent to hinder,

delay, or defraud" the creditor or (2) "[w]ithout receiving a reasonably equivalent value

in exchange for the transfer or obligation," and either (a) "[t]he debtor was engaged or

was about to engage in a business or a transaction for which the remaining assets of the

5.

debtor were unreasonably small in relation to the business or transaction;" or (b) "[t]he debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

{¶ 11} When there is no direct factual allegations to establish fraudulent intent, the plaintiff must allege circumstantial facts about the transaction or parties which indicate at least three "badges of fraud" from which fraudulent intent can be reasonably inferred. Common circumstances which have been associated with fraud are identified in R.C. 1336.04(B):

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

6.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

*Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859, 834 N.E.2d 358, ¶ 36 (6th Dist.); *Individual Business Servs. v. Carmack*, 2d Dist. Montgomery No. 25286, 2013-Ohio-4819, ¶ 25-26; *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 665, 729 N.E.2d 768 (8th Dist.1999) (if there is evidence of an actual intent of fraud, the court does not need to also find evidence of the statutory factors).

**{¶ 12}** In the case before us, appellants alleged that appellee purchased a residential property in Las Vegas, Nevada, for approximately $589,000, in November, 2015, after appellants had filed their lawsuit on August 31, 2015. Appellants asserted Mary Jo Vella purchased the property to conceal her assets with the intent to defraud appellants of their potential judgment in the lawsuit by becoming insolvent. The amount of the purchase price was closely equivalent to the illicit proceeds gained from the fraudulent actions of Rick Vella and the defendants named in the first lawsuit.

**{¶ 13}** Appellants further alleged that: 1) Mary Jo Vella concealed the purchase of the property; 2) she retained possession after the purchase; 3) she transferred the

7.

"assets wrongfully obtained with the intent to hinder, delay, and defraud" appellants from recovering damages arising from the main lawsuit; 4) she transferred the assets "without receiving a reasonably equivalent value in exchange for the transfer or obligation" when she "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or when defendant intended to incur, or believed or reasonably should have believed that she would incur, debts beyond the debtor's ability to pay as they became due."

{¶ 14} With respect to alleging actual "intent to hinder, delay, and defraud," the trial court found appellants did not set forth any fact to establish actual intent. Appellants argue that merely reciting an allegation that appellee purchased the property with an intent to defraud was sufficient. We disagree. While appellants did not have to prove their factual allegations at this stage, they were required by the general rules of notice pleading to allege a set of operative facts to support their legal conclusion that appellee acted with an intent to defraud. Appellants did not set forth any specific operative facts to support their conclusion of actual intent to hinder, delay, or defraud appellant.

{¶ 15} Furthermore, the trial court found that although appellants alleged seven "badges of fraud" (R.C. 1336.04(B)(2), (3), (4), (5), (7), (9), and (10)) from which an intent to defraud could be inferred, four of those badges of fraud (R.C. 1336.04(B)(3), (5), (7), and (9)) were not supported with factual allegations. Of the three remaining badges of fraud which were supported by factual allegations (R.C. 1336.04(B)(2), (4),

8.

and (10)), the trial court found one of those (that appellee retained possession of the house, R.C. 1336.04(B)(2)) could only be viewed as establishing that appellee had not attempted to hide the asset from collection. The trial court concluded that the other two alleged badges of fraud were insufficient to support the claim of a fraudulent conveyance under R.C. 1336.04(A)(1).

{¶ 16} As to the claim of constructive fraud, R.C. 1336.04(A)(2), the trial court concluded appellants had not stated a claim because the deed and tax appraisal attached to the complaint indicate the property was transferred for market value. The trial court adopted appellee's argument that the assets where not placed out of reach of appellant, but converted from a liquid form to a real property asset, which would be more secure for a creditor. Therefore, the trial court found that appellants could not prove any set of facts in support of their claim for fraudulent conveyance under R.C. 1336.04(A)(2).

{¶ 17} On appeal from the motion to dismiss, appellants first argue that the trial court erred by considering appellee's purported reason for purchasing the home and her statement that the home was purchased for fair market value because these allegations were outside the pleadings. We find this argument lacks merit. There is no indication in the record that the trial court considered these allegations of fact and the trial court specifically recited only the allegations of fact from the complaint.

{¶ 18} Appellants also argue that the trial court erred when it considered the prima facie elements of R.C. 1336.04(A)(1) and (2) as cumulatively rather than alternatively. Again, this argument is contrary to the specific statements in the trial court's judgment.

9.

The trial court clearly distinguished between claims under R.C. 1336.04(A)(1) and (2). The "badge of fraud" factor of whether a transfer of assets was made for less than the value received, R.C. 1336.04(B)(8), is also a prima facie element of a claim of constructive fraud under R.C. 1336.04(A)(2). The court appropriately considered the facts contained in the deed and tax appraisal attached to the complaint with respect to the constructive fraud claim. We also agree with the trial court's analysis that the deed and tax appraisal tend to prove that the home was purchased for market value.

{¶ 19} Finally, appellants argue that appellee indicated during an arbitration proceeding on other pending claims that she is domiciled in Nevada, which appellants argue will lead to her declaring a $550,000 homestead exemption. While this allegation of fact would have been relevant to the issue of intent to defraud, it was not alleged in appellant's complaint and was not considered by the trial court. Therefore, we cannot consider it on appeal. Allegations made in an appellate brief cannot be considered by the appellate court since they lack evidentiary value. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶ 20} Accordingly, we find appellant's sole assignment of error not well-taken.

{¶ 21} Having found that the trial court did not commit error prejudicial to appellants and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

10.

L-16-1276
Ohio Pickling &
Processing, LLC, et al. v.
Mary Jo Vella, et al.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.

_____
                        JUDGE

Thomas J. Osowik, J.

_____

James D. Jensen, P.J.
CONCUR.
                        JUDGE

_____
                        JUDGE