[Cite as *Parmatown south assn. vs. Atlantis realty co., L.T.D.*, 2018-Ohio-2520.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106503**

**PARMATOWN SOUTH ASSOCIATION**

PLAINTIFF

vs.

**ATLANTIS REALTY CO., LTD.**

DEFENDANT/THIRD-PARTY
PLAINTIFF-APPELLANT

vs.

**DEAN RANKIN, ET AL.**

DEFENDANTS/THIRD-PARTY
DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-08-669896

**BEFORE:** Stewart, P.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:** June 28, 2018

**ATTORNEY FOR APPELLANT**

James E. Boulas
James E. Boulas Co., L.P.A.
Raintree Plaza
7912 Broadview Road
Broadview Hts., OH 44147


**ATTORNEYS FOR APPELLEES**

**For Dean Rankin**

Janet I. Stich
1799 Akron Peninsula Road, Suite 227
Akron, OH 44313

**For Peggy Rankin**

James L. Wamsley
2703 Leighton Road
Shaker Hts., OH 44120

**For Michael Marron, et al.**

Michael P. Harvey
Michael P. Harvey Co., L.P.A.
311 Northcliff Drive
Rocky River, OH 44116

**For Expert Construction, Inc.**

Scott R. Sylkatis
Sylkatis Law L.L.C.
199 North Leavitt Drive, Suite 200
Amhert, OH 44001

R. Russell O'Rourke
28601 Chagrin Boulevard, Suite 600
Cleveland, OH 44122

**For Lorain National Bank**

Melissa A. Jones
Frantz Ward L.L.P.
200 Public Square, Suite 3000
Cleveland, OH 44114

**For Cuyahoga County Treasurer**

Michael C. O'Malley
Cuyahoga County Prosecutor

Gregory B. Rowinski
Assistant Prosecutor
310 West Lakeside Avenue, Suite 300
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1} This is an appeal from a summary judgment granted to third-party defendants-appellees Dean Rankin, Peggy Rankin, Michael Marron, and Amy Marron on third-party plaintiff-appellant Atlantis Realty Company, Ltd.'s complaint for fraud. Atlantis alleged that the third-party defendants, who operated a general contracting company called Baywest Construction Group, Ltd., took $20,000 in money earmarked for Baywest's completion of certain contracting services, but failed to complete construction and instead fraudulently used the money for their own purposes. The court approved and adopted a magistrate's decision granting summary judgment because there was no evidence to support the fraud claim. The sole assignment of error contests this ruling.

{¶2} To understand the nature of the third-party complaint, it is necessary to backtrack to 2008. At that time, Atlantis owned an office building and used Baywest as the general contractor on a buildout of one of the office suites. Expert Construction was an electrical subcontractor on the job. There were issues on the job, and Baywest stopped work because of nonpayment.

{¶3} As the issues between Atlantis and Baywest were ongoing, Parmatown South Associates sought foreclosure against Atlantis for nonpayment of certain maintenance fees that are unrelated to the issues in this appeal. Expert Construction had a mechanic's lien against the Atlantis premises, necessitating its participation in the Parmatown South action. Atlantis then filed a third-party complaint against Baywest arguing that it breached a contract to provide construction services. It alleged that it paid Baywest $20,000 based on Baywest's representation, made through its general manager, that the payment would be used to "get the subs back onsite" and allow it to complete construction of the premises. Additional construction did not occur. Baywest ceased operations in 2010. Atlantis filed an amended complaint naming the individual third-party defendants as "principals" of Baywest, seeking to pierce the corporate veil on the allegations that the individual defendants fraudulently used the money for their own personal purposes. Atlantis also alleged that a fraudulent transfer occurred under R.C. 1336.04 because the defendants were "insiders" who accepted the $20,000 payment with an actual intent to defraud Atlantis.

{¶4} The Rankins and the Marrons filed separate motions for summary judgment, but made overlapping arguments that they were shielded from personal liability by the corporation. With respect to Atlantis's attempt to pierce the corporate veil, the Rankins and Michael Marron argued that they had no ownership interest in Baywest and were not "principals" of the corporation such that the corporate veil could be pierced to find them personally liable for any debt of Baywest. It was conceded that Amy Marron was a shareholder of Baywest; nevertheless, she argued that no representations had been made to Atlantis about the manner in which the $20,000 payment was to be used.

{¶5} Atlantis argued that the $20,000 payment had been made in actual reliance on Baywest's representations that the payment would be applied to avoid mechanic's liens and complete construction. It cited a Baywest partial waiver of liens against Expert Construction as evidence that Baywest's representation was false, claiming that Baywest did not actually pay the sums owed to Expert Construction.

{¶6} The court took a different approach. It noted that Atlantis claimed that Baywest made two false representations: (1) that Baywest would perform construction services and that subcontractors would be paid in order to remove any liens on the property, and (2) that a letter from Baywest's general manager contained assurances that a payment of $20,000 would result in the completion of the project and payment of subcontractors. The court concluded that these two claims were contractual obligations, the breach of which by itself was not evidence of fraud. The court found "no evidence that the contract was entered into falsely" and that "it would go beyond construing the evidence in Atlantis's favor" to construe the general manager's letter "as a false assurance that construction services would resume for only $20,000."

{¶7} Fraud must be pleaded with particularity. *See* Civ.R. 9(B). This requirement means that "the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud." *Minaya v. NVR, Inc.*, 8th Dist. Cuyahoga No. 105445, 2017-Ohio-9019, ¶ 11. The elements of a fraud claim are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

{¶8} Atlantis alleged that the defendants "used Baywest to obtain money from Atlantis under the pretense that Baywest would perform construction services at the Premises and that the subcontractors would be paid so there would be no liens on the Premises."  It further alleged that the defendants made "the false promise that the construction would be completed and the subcontractors would be paid[,]" but rather than completing construction and paying the contractors, the defendants "converted the money obtained from Atlantis for their own personal use."

{¶9} The "false promise" made by Baywest's general manager was allegedly contained in a July 20, 2009 letter to Atlantis, which reads in relevant part as follows:

> As previously discussed, and you agreed, Baywest is currently owed $8,951.40 JUST TO BE PAID UP TO DATE.  In addition, there are two (2) change orders that were originally submitted to you on
> Feb. 6, 2008, that total $11,946.00.
>
> In our meeting several weeks ago you committed to making the total payment of $20,897.40 the following Tuesday when you and I met at the site.  To date you have done nothing other than to try to change the terms.  Our meeting was to determine the scope of work and cost(s) necessary to 1) bring the project back to the state it was prior to out [sic] having to stop work over 1 year ago, 2) determine what was needed to complete the original scope of work and 3) determine what additional work you wanted done.
>
> As also discussed, once the costs for 1, 2 and 3 above are known, approved by you and Baywest has received payment of $20,987.00 we will be willing to return and complete the work.  Payment in full of the balance would be due immediately on completion.  These additional costs will include re-mobilization, new permitting (as required by Parma), and probable replacement of subcontractors (with cost changes) and material prices changes from the original bid in August 2007 to now.

As explained to you, there is no way Baywest will be able to get subs back onsite without "cash in hand." I'm sure you would not continue to see a patient that had a balance due, wanted more treatment yet promised to pay you "everything once everything is done." Baywest and our subcontractors have been your bank for over 1 year on this project, we simply cannot, and will not, continue that practice. We have incurred additional costs due to your non-payment that include legal fees and interest charges. We will determine just what these costs are and will expect, at minimum, some compensation for them.

{¶10} The letter does not prove that Baywest obtained money from Atlantis under the pretense that it would perform construction services and that the subcontractors would be paid so there would be no liens on the premises. Baywest's statement that "there is no way Baywest will be able to get the subs back onside without 'cash in hand'" was not a promise to pay the subcontractors and remove the liens on the premises. Rather, it emphasized the unremarkable proposition that unless Atlantis paid Baywest in a timely manner, it would not be able to pay the subcontractors. Acknowledging this was not the same as promising that the subcontractors would return and complete their jobs if Atlantis made the $20,897.40 payment. Baywest made it clear that the $20,897.40 payment would not be in full satisfaction of the project, but constitute the amount due and owing, and would only be enough to cause Baywest to renew work on the project. This was shown by Baywest's statement that even after receipt of the $20,897.40 payment, it expected that another "[p]ayment in full of the balance would be due immediately on completion." This additional payment also included "material price changes from the original bid." So Atlantis had no reason to believe that anything stated in the letter was meant to state that construction would be completed based solely on the $20,897.40 payment.

{¶11} We agree with the court that "[t]he failure of a contractual obligation by itself is not evidence of fraud." *See Ketcham v. Miller*, 104 Ohio St. 372, 376, 136 N.E. 145 (1922) (finding a breach of contract could not be converted to a tort regardless of whether "the breach was unlawful, willful, wanton, and malicious."). We find, consistent with Civ.R. 56(C), that there are no facts showing that Baywest knowingly induced Atlantis to make the payment with no intention of completing the work. Artful pleading by Atlantis cannot convert a breach of contract claim into a fraud claim. The court did not err by granting summary judgment on the fraud claim.

{¶12} We reach a similar conclusion on the fraudulent transfer claim. Atlantis alleged a fraudulent transfer under R.C. 1336.04(A)(1), the Uniform Fraudulent Transfer Act, which states:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

{¶13} This section of the act refers to a debtor's dissipation of assets to frustrate a creditor's ability to collect on a debt. The debtor has a defense to a fraudulent transfer claim if it can be shown that the transfer was made in good faith and that the debtor received "reasonably equivalent value" from the transferee. *See* R.C. 1336.04(B)(8); *Blood v. Nofzinger*, 162 Ohio App.3d 545, 2005-Ohio-3859, 834 N.E.2d 358, ¶ 50 (6th Dist.).

**{¶14}** The fraudulent transfer act has no application to this case. Only a creditor has a cause of action under the act, and Atlantis was not a creditor. The act defines a "creditor" as "a person who has a claim." R.C. 1336.01(D). Conversely, the act defines a "debtor" as "a person who is liable on a claim." R.C. 1336.01(D). The letter sent by Baywest's general manager shows that Atlantis owed Baywest money for construction services rendered. The facts do not show that Baywest purposely dissipated the $20,897.40 payment in order to frustrate Atlantis's ability to collect on a debt. The fraudulent transfer act does not apply as a matter of law.

**{¶15}** Even if the act did apply, we agree with the court that its disposition of the fraud claim also informed the disposition of the fraudulent transfer claim. The court correctly found that "[a]s a consequence of Atlantis Realty's failure to meet its evidentiary burden in responding to the motions for summary judgment on Atlantis Realty's claim for fraud, its consequential claims for fraudulent transfer and malice also fail, for lack of evidence of any falsehood or malice." The lack of any evidence showing that Baywest fraudulently promised to complete the project if paid the sums owned by Atlantis is likewise pertinent to the fraudulent transfer claim — without fraudulent intent, there is no fraudulent transfer. Likewise, there was no evidence that Baywest acted with malice.

**{¶16}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR
KEYWORDS AND SUMMARY: