HARRISON et al., Appellees,

v.

CREVISTON et al., Appellants.

[Cite as *Harrison v. Creviston,* 168 Ohio App.3d 349, 2006-Ohio-3964.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 86732.

Decided Aug. 3, 2006.

John S. Chapman & Associates, Inc., John S. Chapman, and Jason T. Albin, for appellees.

Weltman, Weinberg & Associates, Scott S. Weltman, and Jennifer M. Monty, for appellants.

Law Firm of Victor A. Mezacapa III and Victor A. Mezacapa III, for defendant.

SEAN C. GALLAGHER, Judge.

{¶ 1} Defendants-appellants, Patrick Finley and Donna LaQuatra, appeal from a common pleas court order granting summary judgment in favor of plaintiffs-appellees, Matthew and Marta Harrison, on their claims for unjust enrichment and fraudulent transfer. Appellants claim that the court erred by denying their motion to dismiss and by granting summary judgment in favor of the Harrisons, because the evidence did not support the Harrisons' claims and appellants were prejudiced by the Harrisons' delay in asserting their rights. For the reasons stated herein, we affirm the ruling granting summary judgment on the basis that the trial court properly found that a fraudulent transfer had occurred.

{¶ 2} The record in this case, which includes joint stipulations of fact that were submitted to the trial court, reveals the following facts. LaQuatra, Finley, and the Harrisons all provided funds for investment purposes to Dan P. Creviston, doing business as Creviston Investment and Creviston Mutual Fund. LaQuatra transferred $20,000 to Creviston in June 1998 to invest on her behalf.[1] Finley

---

1. In an affidavit attached to defendant's summary-judgment motion, LaQuatra averred that she had transferred $30,000 to Creviston to invest for her. Creviston's affidavit, attached to plaintiff's motion for summary judgment, stated that LaQuatra had transferred only $20,000 to him. The stipulations assert that she made two $10,000 transfers to Creviston in June 1998, but it is not clear from the stipulations whether LaQuatra continued to assert that she had paid Creviston an additional $10,000.

transferred a total of $40,000 to Creviston in April and September 2001 for the same purpose. In March 2002, LaQuatra asked Creviston to return her money. In July 2002, Creviston informed Finley that his investment had increased to $61,000; shortly thereafter, Finley also asked Creviston to return his money.

{¶ 3} On October 1, 2002, the Harrisons began to transfer funds to Creviston to invest on their behalf. A few weeks later, on October 29, 2002, Finley, LaQuatra, and several others filed an action against Creviston in Cuyahoga County Common Pleas Court to recover their investments. On November 1, 2002, the Harrisons delivered an installment of $200,000 to Creviston.[2] Creviston deposited this amount into his bank account and, on the following day, paid Finley $65,000 and LaQuatra $50,000. The Harrisons demanded the return of their money on December 4, 2002, and subsequently filed this action on April 25, 2003, to recover funds that they had invested with Creviston.

{¶ 4} An involuntary bankruptcy proceeding was filed against Creviston on August 1, 2003. On September 30, 2004, a nondischargable judgment was issued in the bankruptcy proceedings on behalf of the plaintiffs in this case and others. Neither LaQuatra nor Finley participated in the bankruptcy proceeding.

{¶ 5} The Harrisons filed an amended complaint on August 30, 2004, naming as defendants not only Creviston, but also his wife, Linda, his minor son, Nate, and his sister-in-law, Heidi J. Busch, as well as appellants, Patrick Finley and Donna LaQuatra.

{¶ 6} The Harrisons' complaint alleged that both Finley and LaQuatra invested money with Creviston before the Harrisons invested their money with him. The Harrisons asserted that the transfer of funds from Creviston to Finley and LaQuatra were fraudulent as to the Harrisons and that Finley and LaQuatra were unjustly enriched at the Harrisons' expense when Creviston used the funds obtained from the Harrisons to pay Finley and LaQuatra $65,000 and $50,000, respectively. The Harrisons asked Creviston to liquidate their account and return their funds, but he refused to do so. The Harrisons also asserted claims for fraud and conversion against Creviston, and maintained claims for fraudulent conveyance and unjust enrichment against Linda Creviston, Nate Creviston, and Heidi Busch.

{¶ 7} Finley and LaQuatra moved the trial court to dismiss the claims against them for failure to state a claim. The court denied this motion. Finley and LaQuatra then answered, asserting as affirmative defenses that the complaint was barred by laches, estoppel, and/or waiver.

---

2. The Harrisons claimed that their total investment with Creviston was $379,000.

{¶ 8} The Harrisons filed their motion for summary judgment on April 6, 2005. Finley and LaQuatra filed a cross-motion for summary judgment and a brief in opposition to the Harrisons' motion on May 31, 2005. On June 21, 2005, the court granted the Harrisons' motion, awarding them judgment in the amount of $65,000 against Finley and $50,000 against LaQuatra, and ordered that a constructive trust be established on behalf of the Harrisons. The court further found no just reason for delay. The trial court concluded that appellants were unjustly enriched at the Harrisons' expense and that a fraudulent transfer had occurred pursuant to R.C. 1336.01, 1336.04, and 1336.05.

{¶ 9} Essentially, the court determined that Finley and LaQuatra received a benefit and knew it, even though they did not know that the Harrisons were the source of the benefit. The court found that it would be unjust for Finley and LaQuatra, whose money was lost through poor investments by Creviston, to retain the funds. The court further concluded that the Harrisons had proved the transfers from Creviston to Finley and LaQuatra were fraudulent.

{¶ 10} It is from this decision of the trial court that Finley and LaQuatra appeal. They have raised two assignments of error for our review that provide as follows:

{¶ 11} "I. The trial court made an error in law denying [appellants'] motion to dismiss and later granting [appellees'] motion for summary judgment where the questioned transaction was not fraudulent as a matter of law."

{¶ 12} "II. The trial court erred in granting judgment for [appellees] because [their] delay in asserting rights materially prejudiced [appellants]."

{¶ 13} As an initial matter, we decline to consider the trial court's denial of the motion to dismiss. App.R. 3(D) requires an appellant to specify the order being appealed. Specifically, App.R. 3(D) provides: "Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Because the notice of appeal in this case specified only that the summary-judgment ruling was being appealed, we exercise our discretion and will not consider the motion to dismiss.

{¶ 14} We review the common pleas court's decision on the parties' summary-judgment motions de novo. See, e.g., *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A party may prevail on summary judgment "only if '(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.'"

Id., quoting *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 15} The Harrisons presented two alternative claims for relief against appellants: first, a claim for unjust enrichment and, second, a claim for fraudulent transfer. We decline to review the trial court's award for unjust enrichment, as we believe the trial court's decision to grant summary judgment for the Harrisons can be affirmed on the basis that a fraudulent transfer occurred.

■ {¶ 16} With respect to the unjust-enrichment claim, we note only that there is no clear showing in the record that the appellants had knowledge that the benefit they received from Creviston had come at the expense of the Harrisons. The trial court noted as much in citing to *Sylvester Material Co., Inc. v. Environmental Network & Mgt. Corp.* (Dec. 22, 1999), Seneca App. No. 13–99–40, 1999 WL 1243209. Nevertheless, we decline to decide this case on the basis of the unjust-enrichment claim, but rather, we focus our attention on the fraudulent-transfer claim.

{¶ 17} A transfer made by a debtor may be deemed fraudulent as to a creditor if the transfer was made with actual intent to defraud a creditor or if the transfer was constructively fraudulent. R.C. 1336.04(A).

{¶ 18} R.C. 1336.01(F) defines "debtor" as "a person who is liable on a claim." A "creditor" means "a person who has a claim." R.C. 1336.01(D). R.C. 1336.01(C) defines "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." In determining whether a debtor made a transfer with actual intent to defraud a creditor, R.C. 1336.04(B) provides that a trial court should consider "all relevant factors," including, but not limited to, the 11 "badges of fraud" outlined in the statute.

{¶ 19} Our review of the record in this case finds that at least six of the 11 so-called "badges of fraud" outlined in the statute were present, supporting the trial court's determination that a fraudulent transfer had occurred. The applicable "badges of fraud" under R.C. 1336.04(B) were as follows:

{¶ 20} "(3) Whether the transfer or obligation was disclosed or concealed."

{¶ 21} Creviston concealed from the Harrisons his conversion and subsequent transfer of their funds to Finley and LaQuatra. The Harrisons believed that the money was to be used as an investment, not to satisfy Creviston's purported debts to Finley and LaQuatra. Creviston never disclosed his use of the funds to the Harrisons.

{¶ 22} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit."

{¶ 23} Creviston had been sued by appellants and others to whom he had made the payments. The fact that Creviston paid purported creditors who had pending claims against him with funds received from the Harrisons is evidence that can be considered in supporting the claim of fraud by the Harrisons as "other" creditors.

{¶ 24} "(5) Whether the transfer was of substantially all of the assets of the debtor."

{¶ 25} Although the transfer of $115,000 is not "substantially all" of the Harrisons' $200,000 total, it amounted to "substantially all" of the total assets held by Creviston. Creviston was clearly broke, as evidenced by his involuntary bankruptcy in August 2003. He had no funds. Arguably, if he had other assets, he could have paid off the purported creditors sooner.

{¶ 26} "(7) Whether the debtor removed or concealed assets."

{¶ 27} Creviston concealed the Harrisons' assets from them by telling the Harrisons that he would invest the assets, when in fact they were used to placate Finley and LaQuatra.

{¶ 28} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."

{¶ 29} Creviston had no basis from this record to claim "reasonable consideration" from Finley and LaQuatra for the transfer of the Harrisons' funds. Again, Finley and LaQuatra were investors who apparently lost their investments through Creviston's bad investment strategy. Although victimized by Creviston's hollow promises, Finley and LaQuatra were not entitled to an investment windfall that did not, in reality, exist. As the trial court noted, relying on Creviston's affidavit, since the appellants had lost their investment, they no longer had assets, and thus there could not have been reasonable equivalent value.

{¶ 30} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."

{¶ 31} Creviston was obviously insolvent at the time of the transfer. The turnaround time between the Harrisons' fund transfer and the subsequent, almost immediate, payment to Finley and LaQuatra makes this point clear. It would appear that if Creviston had any other funds, he would not have waited to pay appellants. Although no actual evidence was offered concerning Creviston's debts and assets at the time the transfer was made, a reasonable interpretation of the facts leads to the conclusion that Creviston was insolvent. His subsequent bankruptcy supports this conclusion.

{¶ 32} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred."

{¶ 33} While there may be a debate over whether appellants were owed money for their lost investments, there is clear evidence that Creviston believed he had incurred a substantial debt to Finley and LaQuatra at the time he transferred the funds to them. The pending lawsuit also supports this assertion.

{¶ 34} These "badges of fraud" support the trial court's determination that a fraudulent transfer occurred pursuant to R.C. 1336.04(A)(1).

{¶ 35} The evidence here demonstrates that Creviston transferred the funds he received from the Harrisons to Finley and LaQuatra. The causal relationship between the Harrisons' loss and appellants' gain was Creviston. By accepting the Harrisons' money for investment, Creviston effectively controlled those funds. The Harrisons' money, in effect, became Creviston's property. See R.C. 1336.01(L), 1336.01(B) and 1336.01(J). Thus, Creviston became a debtor to the Harrisons. The subsequent, and immediate, transfer by Creviston of a portion of the Harrisons' investment to Finley and LaQuatra demonstrated that Creviston had no intention to use the funds for their intended purpose.

{¶ 36} Whether Finley and LaQuatra thought they should have their initial investments repaid, with a handsome profit premised on Creviston's false promises, is not controlling. Although there was no legal relationship between appellants and the Harrisons, under these unique facts, the trial court saw the situation for what it was and determined that appellants should not receive a windfall at the expense of the Harrisons.

{¶ 37} This is a case of robbing Peter to pay Paul. While additional hearings might clarify certain factors in these transactions, there are no material issues of fact in dispute regarding the fraudulent-transfer claims.

{¶ 38} The transfer was also fraudulent under R.C. 1336.04(A)(2). A transfer is constructively fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer * * * and if either of the following applies: (a) [t]he debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (b) [t]he debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." R.C. 1336.04(A)(2).

{¶ 39} Further, R.C. 1336.05(A) provides that "[a] transfer made * * * by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made * * * if the debtor made the transfer * * * without receiving a reasonably equivalent value in exchange for the transfer * * * and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer * * *."

{¶ 40} Creviston made the transfer of the Harrisons' funds to Finley and LaQuatra without receiving any viable consideration. Further, the record indicates that Creviston had virtually no assets other than the Harrisons' funds and that Creviston was incurring a debt to the Harrisons he likely would be unable to satisfy. The facts here support a finding of a fraudulent transfer under R.C. 1336.04(A)(2)and 1336.05(A).

{¶ 41} As a final matter, insofar as appellants claim that they have been materially prejudiced by the Harrisons' delay in asserting their claims, we do not find the Harrisons' claims to be barred by laches or otherwise.

{¶ 42} Appellants' first and second assignments of error are overruled. The judgment of the trial court is affirmed with respect to the trial court's granting of summary judgment in favor of the Harrisons.

Judgment affirmed.

COONEY, P.J., concurs.

ROCCO, J., dissents.

KENNETH A. ROCCO, Judge, dissenting.

{¶ 43} I am astonished that the trial court would grant, and my colleagues would affirm, a summary judgment for the *plaintiffs* in a case as fact-bound as this. The plaintiffs, of course, bear the burden of proving their case. While in some cases, the plaintiff's proof may be unrefuted or certain elements of the case may be admitted, this is not one of them. Cf. *Cleveland Mack Leasing, Ltd. v. Chef's Classics, Inc.*, Mahoning App. No. 05 MA 59, 2006-Ohio-888, 2006 WL 459269.

{¶ 44} The majority opinion ignores one of the most fundamental tenets of our business laws: Cash is fungible. See, e.g., *Adkins v. Perry* (2004), 116 Fed.Appx. 605, 611. Creviston was not a bailee of the Harrisons' funds. Cf. *Edwards v. Horsemen's Sales Co.* (1989), 148 Misc.2d 212, 213, 560 N.Y.S.2d 165. He did not hold the Harrisons' money in a separate fund on their behalf, but rather commingled their funds with whatever other funds he may have had in his bank account. Once he did so, the Harrisons' money lost its separate character. The Harrisons, like Finley and LaQuatra before them, had only Creviston's promise to make investments on their behalf. Consequently, it is simply wrong to say that Creviston used "the Harrisons'" money to repay LaQuatra and Finley.

{¶ 45} To suggest that it was fundamentally unfair for Finley and LaQuatra to have recovered anything from Creviston because Creviston lost "their" money ignores the fact that Finley and LaQuatra had legitimate claims against Creviston. There is no evidence that Finley and LaQuatra knew that Creviston had

lost their funds at the time they filed suit against him; based on Creviston's misrepresentations, they may well have believed that their accounts had successfully grown since they invested with him. This belief may have been proved wrong in the course of the litigation, but it did not make their claims any less legitimate. Furthermore, if Finley and LaQuatra learned that Creviston had lost "their" money, they may well have had other claims against him for negligence, fraud, or the like. These claims provided ample grounds for Creviston to settle with Finley and LaQuatra, even if he did lose the investments he made for them.

{¶ 46} The Harrisons presented two claims for relief against Finley and LaQuatra, a claim for unjust enrichment and a claim for fraudulent transfer. In my opinion, the common pleas court improperly granted summary judgment on both of these claims. Because the majority believes that the judgment on the fraudulent-transfer claim alone warrants affirmance, I will address that claim first.

Fraudulent–Transfer Claim

{¶ 47} A transfer made by a debtor may be deemed fraudulent as to a creditor if the transfer was made with actual intent to defraud a creditor or if the transfer was constructively fraudulent. R.C. 1336.04(A). In determining whether a debtor made a transfer with actual intent to defraud a creditor, R.C. 1336.04(B) provides that the court should consider "all relevant factors, including, but not limited to, the following:

{¶ 48} "(1) Whether the transfer or obligation was to an insider."

{¶ 49} There was no evidence that Finley and LaQuatra were insiders. The term "insider" is defined in R.C. 1336.01(G). When the debtor is an individual, the term includes "(a) A relative of the debtor or of a general partner of the debtor; (b) A partnership in which the debtor is a general partner; (c) A general partner in a partnership described in division (G)(1)(b) of this section; (d) A corporation of which the debtor is a director, officer, or person in control." Finley and LaQuatra were creditors of Creviston; there is no evidence that they were either his relatives, partners, or relatives of his partners. There is no evidence of this important badge of fraud.

{¶ 50} "(2) Whether the debtor retained possession or control of the property transferred after the transfer."

{¶ 51} There is no evidence that Creviston retained possession or control of the funds he transferred to Finley and LaQuatra.

{¶ 52} "(3) Whether the transfer or obligation was disclosed or concealed."

{¶ 53} There is no evidence that Creviston either disclosed to the Harrisons the transfer to Finley and LaQuatra or concealed the transfer from them. In

concluding that Creviston "concealed" the transfer from the Harrisons, the majority confuses concealment with nondisclosure. This confusion appears to be based, at least in part, on the mistaken belief that the Harrisons' funds retained their separate character after they were transferred into Creviston's bank account, creating some sort of disclosure duty as to the funds' disposition. I firmly disagree: Once the funds were transferred to Creviston, they were his; he had no obligation to disclose to the Harrisons what he did with those particular funds. Consequently, his nondisclosure cannot be seen as concealment.

{¶ 54} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit."

{¶ 55} In my opinion, the majority misconstrues this "badge of fraud." I believe that the purpose of this badge is to demonstrate that the debtor had a motive to hide assets from the threatening creditor. See, e.g., *Spangler v. Redick* (1991), 74 Ohio App.3d 798, 804, 600 N.E.2d 720 (plaintiff alleged that defendant attempted to conceal assets after he learned of plaintiff's suit). Its purpose is *not*, as the majority suggests, to show that the debtor had some reason to make a transfer *to* the threatening creditor to the detriment of other creditors. Here, Creviston had actually been sued by Finley and LaQuatra and others, to whom he made the payments. There was no threat of suit by the Harrisons at that time, nor was there any evidence of any other litigation by other creditors against him. The fact that Creviston paid a creditor with a pending claim against him is not evidence of any actual fraud on other creditors.

{¶ 56} "(5) Whether the transfer was of substantially all of the assets of the debtor."

{¶ 57} There is no evidence of Creviston's assets at the time of the transfer. Consequently, we cannot fully assess this badge of fraud. However, it is clear that on the day before these transfers were made, Creviston had the $200,000 given to him by the Harrisons. Even if we make the drastic assumption that this $200,000 constituted all of Creviston's assets at the time, the transfer of $115,-000—roughly 58 percent of the total—is not a transfer of "substantially all" of Creviston's assets.

{¶ 58} The majority relies on Creviston's August 2003 involuntary bankruptcy as evidence that "he had no funds" *nine months earlier*. While the involuntary bankruptcy might be cause for further investigation as to the state of Creviston's finances in November 2002, the assumption that he had no assets [3] nine months earlier is unwarranted. This assumption certainly cannot support the conclusion

---

3. That is, that he had no assets other than the funds transferred to him by the Harrisons.

that there is no genuine issue of material fact whether Creviston transferred "substantially all" of his assets to Finley and LaQuatra.

{¶ 59} "(6) Whether the debtor absconded."

{¶ 60} Creviston did not abscond.

{¶ 61} "(7) Whether the debtor removed or concealed assets."

{¶ 62} There is no evidence that Creviston removed or concealed assets. Again, the majority's determination that he did conceal assets from the Harrisons implies that he had some duty to trace "their" funds. He did not.

{¶ 63} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred."

{¶ 64} I cannot say *as a matter of law* that Creviston did not receive consideration reasonably equivalent to the amounts he paid Finley and LaQuatra. Rather, the evidence discloses that this is a genuine issue of material fact.

{¶ 65} By focusing on the narrow point that Creviston lost Finley and LaQuatra's money, the majority loses sight of the fact that Finley and LaQuatra had other arguably valid claims against Creviston that were subject to settlement and may have provided reasonably equivalent value. The majority recognizes that Finley and LaQuatra were "victimized" by Creviston, yet fails to recognize that this victimization itself may have created a compensable claim.

{¶ 66} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."

{¶ 67} On the evidence before us, it is impossible to discern whether Creviston was insolvent or became insolvent shortly after the transfers were made to Finley and LaQuatra. "A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation." R.C. 1336.02(A)(1). There is no evidence of Creviston's debts and assets at the time this transfer was made. The Harrisons urge us to conclude that Creviston was insolvent because he was unable to repay them after he transferred the funds to Finley and LaQuatra. There is insufficient evidence in the record to reach this simplistic conclusion. Moreover, the fact that Creviston was involuntarily placed in bankruptcy *nine months* later does not demonstrate that he became insolvent "shortly after" the transfer.

{¶ 68} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred."

{¶ 69} The majority opinion suggests that this badge of fraud is proved because Creviston incurred the debt to Finley and LaQuatra at approximately the same time that he made the transfer to them. This analysis makes little

sense. First, Finley and LaQuatra's filing of a lawsuit was not the event which created the debt from Creviston to them; the lawsuit was merely their method of collecting the asserted debt. More important, it is not fraudulent to transfer funds to a legitimate creditor. Therefore I disagree with the majority's analysis of this "badge," and would find that there is no evidence that Creviston incurred a substantial debt at approximately the same time he transferred these funds to Finley and LaQuatra.

{¶ 70} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."

{¶ 71} There is no evidence that such a transfer occurred.

{¶ 72} Viewing the evidence in the light most favorable to Finley and LaQuatra, the nonmoving parties, genuine issues of material fact preclude summary judgment on the question whether Creviston's transfer of funds to them was actually fraudulent as to the Harrisons, pursuant to R.C. 1336.04(A)(1).

{¶ 73} The same genuine issues of material fact also preclude summary judgment on the question whether the transfer was constructively fraudulent under R.C. 1336.04(A)(2). A transfer is constructively fraudulent if the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer * * * and if either of the following applies: (a) [t]he debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (b) [t]he debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." R.C. 1336.04(A)(2). As noted above, there is a genuine issue of fact whether Creviston received a reasonably equivalent value in exchange for the transfer to Finley and LaQuatra. Neither party submitted any evidence from which we could determine whether Creviston's assets were unreasonably small in relation to his business or whether he intended to incur debts beyond his ability to pay them.

{¶ 74} Finally, genuine issues of material fact preclude summary judgment on any fraudulent-transfer claim pursuant to R.C. 1336.05. R.C. 1336.05(A) provides that "[a] transfer made * * * by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made * * * if the debtor made the transfer * * * without receiving a reasonably equivalent value in exchange for the transfer * * * and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer * * *." Assuming that the Harrisons had a "claim"—that is, a right to payment—immediately after they deposited their money with Creviston, there are genuine issues of material fact whether Creviston received "reasonably equivalent value" from Finley and LaQuatra in ex-

change for the transfer and whether he was insolvent at the time or became insolvent as a result of the transfer to Finley and LaQuatra.

Unjust–Enrichment Claim

{¶ 75} In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. A claim for unjust enrichment, or quantum meruit, "rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another without making compensation therefor." *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 57, 2 OBR 57, 440 N.E.2d 590. "As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them." *Zele Funeral Home v. Buttry* (1994), 96 Ohio App.3d 588, 591, 645 N.E.2d 792, fn. 2.

{¶ 76} "It has long been the law of equity that a person who confers a benefit either directly or indirectly upon another in the course of performance of a contract with a third person is not entitled to compensation or restitution from the other party merely because of the failure to [sic] performance by the third party. * * * However, where it appears from all the facts that the conferral of such benefit was the product of fraud, misrepresentation or bad faith by the party accepting and retaining such benefit, equity will imply an obligation to make payment therefor." *Natl. City Bank,* 2 Ohio App.3d at 58, 2 OBR 57, 440 N.E.2d 590.

{¶ 77} A case similar to the present case was recently decided by the Sixth District Court of Appeals in *Firstar Bank, N.A. v. Prestige Motors, Inc.,* Huron App. No. H–04–037, 2005-Ohio-4432, 2005 WL 2049174. In *Firstar,* an automobile dealer drew $750,000 on a bank credit account after the account was closed. It used these funds, in part, to pay Chrysler Financial Corporation ("CFC"). Among other things, Firstar asserted that CFC was unjustly enriched by the payments it received from Prestige, arguing that CFC knew or "would have known had it exercised due diligence" that the funds were from an illegal source. In responding to this argument, the court held, at ¶ 13:

{¶ 78} "Based upon the allegations in the complaint, the 'unjust enrichment' Firstar seeks to recover was actually a benefit conferred upon Prestige, who then simply chose to use the funds to repay certain debts, including loans to CFC. * * * [N]othing in the complaint demonstrates that CFC had any duty to monitor finances or to inquire about or protect Firstar's interests. Absent some contractual duty, we can discern no Ohio law which requires one creditor to

monitor the finances of its debtor for the purpose of protecting the interests of other creditors."

{¶ 79} In this case, the Harrisons claimed that they had conferred a benefit on Finley and LaQuatra by providing money to Creviston, which Creviston in turn paid to Finley and LaQuatra. The evidence shows that the Harrisons gave the money to Creviston for the purpose of making investments on their behalf, not for the purpose of paying Finley and LaQuatra. Thus, there is no causal relationship between the Harrisons' loss and Finley's and LaQuatra's gain. As in *Firstar*, any "benefit" the Harrisons conferred was conferred upon Creviston, not on Finley and LaQuatra. Furthermore, Finley and LaQuatra were creditors of Creviston; they had a pending action against Creviston for the money they claimed he owed them from investments he made on their behalf. Therefore, the funds they received from Creviston were not a "benefit," but only the fulfillment of Creviston's asserted legal obligation to them. Under these circumstances, I would find as a matter of law that the payment by Creviston to Finley and LaQuatra was not a benefit conferred by the Harrisons on Finley and LaQuatra.

{¶ 80} I would hold that the trial court erred by granting summary judgment to the Harrisons. I would reverse the judgment of the trial court and remand the cause for further proceedings on the fraudulent-transfer claim, with instructions to enter judgment for Finley and LaQuatra on the unjust-enrichment claim. Accordingly, I dissent.