OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Mark Thompson, Luther Thompson, and Esteco, Inc. (collectively referred to as Esteco), appeal the decision of the Columbiana County Court of Common Pleas that granted judgment to Defendants-Appellees, William and Wendy Kimpel, on Esteco's claim for fraudfulent transfer. According to Esteco, the trial court erred when it found that the transfer of property from the Kimpels to a company owned by Wendy, Wenkar, LLC, was not a fraudulent transfer. On appeal, Esteco argues that the trial court misapplied the law by not examining whether a prior transfer, from a company owned by William to the Kimpels, was a fraudulent transfer. Esteco is correct. The Fraudulent Transfer Act allows a creditor to recover against a transferee. The Kimpels were transferees of the property from William's company therefore, the trial court should have decided whether that transfer, and not the one between the Kimpels and Wenkar, was a fraudulent transfer. Since the trial court needs to make additional findings of fact before this issue can be decided, its decision is reversed and the matter remanded for further proceedings.
 Facts {¶ 2} The Kimpels, a couple living in Columbiana County, Ohio, owned at least three companies. William owned and operated Kimpel's Jewelry and Gifts, Inc., which he used to run his jewelry business, and Providential Opportunities, Inc., a company he also appears to have used in the jewelry business. Wendy owned Wenkar, a company set up to own and operate rental properties.
 {¶ 3} In September 2003, Esteco loaned Providential $500,000.00 as working capital, based partially on a ring used as collateral which allegedly did not belong to William or any of his companies, and William signed as guarantor of the loan. At the time of the loan, Providential had only $4,375.00 in its bank account. Over the course of the next few months, Providential distributed most of these funds to either William or Kimpel Jewelry and Gifts. The only exception was a payment to National City Bank of $183,634.00 through which Providential purchased real estate on December 26, 2003. That real estate was titled in the names of William and Wendy Kimpel, who *Page 2 
transferred the real estate to Wenkar on December 30, 2003, so Wendy could use it as rental property. Neither Providential nor the Kimpels received anything in exchange for the property. After the transfer, Providential only had $10,000.00 left in its bank account. William testified that Providential owned other assets at the time of the transfer, but could not present any documentation proving this claim, stating that the proof had been lost when the briefcase carrying that information was stolen.
 {¶ 4} Providential eventually defaulted on the loan from Esteco and declared bankruptcy. In October 2005, Esteco filed a complaint against the Kimpels, alleging a fraudulent transfer of the real estate purchased in December 2003 designed to hide it from Esteco, as Providential's creditors. The matter proceeded to a bench trial, after which the trial court issued a detailed judgment entry in which it concluded that the transfer from the Kimpels to Wenkar was not a fraudulent transfer. Notably, the trial court's entry did not address whether the transfer of the property from Providential to the Kimpels was fraudulent.
 Providential is Debtor to Esteco {¶ 5} In its sole assignment of error, Esteco argues:
 {¶ 6} "Given the court's factual determinations, the trial court erred in failing to conclude that the transfer of funds from Providential Opportunities, Inc. to National City Bank was a fraudulent conveyance."
 {¶ 7} The central dispute between the parties is not over the facts. Rather, it is over how the court applies the law to those facts. Esteco believes that the trial court should have examined Providential's financial state to determine whether the transfer was fraudulent, while the Kimpels believe that the trial court properly considered their financial state, not Providential's. Esteco is basically correct.
 {¶ 8} Ohio's Uniform Fraudulent Transfer Act was enacted to create a right of action for a creditor to set aside an allegedly fraudulent transfer of assets. Sanderson Farms, Inc. v. Gasbarro, 10th Dist. No. 01AP-461, 2004-Ohio-1460, at ¶ 40. The Act defines certain types of transfers from a debtor to a transferee as fraudulent. See R.C.1336.04(A) R.C. 1336.05. If a transfer is fraudulent, then a creditor has the *Page 3 
right to sue the original transferee and any subsequent transferee for the value of the transferred property, subject to certain defenses. R.C.1336.08.
 {¶ 9} As stated above, the trial court treated the Kimpels, rather than Providential, as the debtor to Esteco and did not address the transfer from Providential to the Kimpels. This is contrary to the clear language of R.C. 1336.08, which states that the cause of action is against the transferee. The statute is designed this way because the debtor is judgment-proof and the transfer was made to hide the property from the creditor in most fraudulent transfer cases, which is why the transfer is defined as fraudulent in the first place. Since R.C.1336.08(B) gives Esteco the right to sue the Kimpels as transferees of the property from Providential, the trial court should have examined whether the transfer from Providential to the Kimpels was fraudulent and it erred by not engaging in this analysis.
 {¶ 10} Esteco argues that we should review the trial court's decision de novo since the trial court misapplied the law. However, it would be improper to do so in this case. Appellate courts only review purely legal questions de novo. Terry v. Ottawa Cty. Bd. of Mental Retardation Developmental Delay, 165 Ohio App.3d 638, 2006-Ohio-0866, at ¶ 13. As will be discussed below, the issues in this case involve both questions of law and fact; the trial court's factual findings do not address all of the subjects required by a proper application of the law. When a trial court makes findings of fact and conclusions of law, those findings and conclusions show that it incorrectly applied the law, and the issues cannot be resolved without additional findings of fact, then an appellate court should remand the case to the trial court so it can make the necessary findings. Circuit Solutions, Inc. v. Mueller Elec.Co., 9th Dist. No. 05CA008775, 2006-Ohio-4321, at ¶ 8; see alsoHochstetler Buildings, Inc. v. Barnett (Sept. 13, 1991), 5th Dist. No. CA-3626. This matter cannot be resolved without further findings of fact.
 Fraudulent Transfer Generally {¶ 11} Given the facts in this case, there are three basic ways in which Esteco can prove that the transfer was fraudulent: 1) proving the debtor actually intended to *Page 4 
hinder, delay, or defraud any creditor, R.C. 1336.04(A)(1); 2) proving that the transferee did not pay a reasonably equivalent value and either that the debtor's remaining assets of the debtor were unreasonably small or that he would not be able to pay his debts as they became due, R.C.1336.04(A)(2); or, 3) proving that the transferee did not pay a reasonably equivalent value and that the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer, R.C.1336.05(A). The text of those provisions is as follows:
 {¶ 12} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 13} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 14} "(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 {¶ 15} "(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 {¶ 16} "(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." R.C. 1336.04(A).
 {¶ 17} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." R.C. 1336.05(A).
 {¶ 18} Since each of these statutory sections form a different basis for proving a fraudulent transfer, we will analyze each separately. *Page 5 
 R.C. 1336.04(A)(2) {¶ 19} Esteco argues that the transfers of the property from both Providential to the Kimpels and from the Kimpels to Wenkar were fraudulent transfers under R.C. 1336.04(A)(2). It points out that neither Providential nor the Kimpels were paid any consideration for the property and contends that Providential's remaining assets of approximately $10,000.00 were "unreasonably small" in relation to the $500,000.00 debt it owed to Esteco.
 {¶ 20} As stated above, in order to prove that a transfer is fraudulent under R.C. 1336.04(A)(2), the debtor must have made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and either (1) the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (2) the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. In this case, it is undisputed that they received no compensation whatsoever for the property. Thus, the only question is whether either of the other two elements of a fraudulent transfer under R.C.1336.04(A)(2) exist in this case.
 {¶ 21} In this case, there is no evidence that the transfer was fraudulent under R.C. 1336.04(A)(2)(b) since there is no indication that Providential intended to incur further debt after the transfer. The debt that Esteco points to is the debt already incurred to Esteco. However, there are facts in the record addressing the issues involved in 1336.04(A)(2)(a). The trial court could conclude that Providential was engaged in business for which the remaining assets of the debtor were unreasonably small in relation to the business. Thus, this issue must be remanded to the trial court so it can make the necessary findings.
 R.C. 1336.05(A) {¶ 22} Esteco also argues that the transfer of the property was fraudulent under R.C. 1336.05(A). According to Esteco, Providential was insolvent after it transferred *Page 6 
the property and, therefore, the transfer was fraudulent.
 {¶ 23} As stated above, a transfer is fraudulent under R.C. 1336.05(A) if it is made after a creditor's claim has arisen, the debtor does not receive a reasonably equivalent value in exchange for the transfer, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. In this case, the transfer of the property occurred after Esteco made the loan to Providential and Providential received nothing in exchange for the property. Thus, the transfer was fraudulent if Providential "was insolvent at that time or the debtor became insolvent as a result of the transfer."
 {¶ 24} There are two definitions of insolvency in Ohio's Uniform Fraudulent Transfer Act.
 {¶ 25} "(A)(1) A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation.
 {¶ 26} "(2) A debtor who generally is not paying his debts as they become due is presumed to be insolvent." R.C. 1336.02(A)(1).
 {¶ 27} The evidence in this case shows that Providential had only $4,375.00 in its bank account in the month immediately prior to the loan from Esteco. Over the course of the next few months, Esteco distributed $493,634.00, most of which went to William and his jewelry store. The final distribution of $183,634.00 went to National City Bank to pay for the property which is the subject of this litigation. After that distribution was made, Providential only had $10,000.00 in its bank account.
 {¶ 28} William testified that these bank accounts were not all of Providential's assets at the time of the transfer. He testified that Providential would have also owned some "stones * * * and things like that" at the time, although he did not know the value of those assets. Nevertheless, William denied that the transfer of the property transferred "substantially all of the assets of Providential" at the time of the transfer and that the company was "financially solvent." William did not have any documents backing up this claim, stating that they had all been stolen.
 {¶ 29} The undisputed evidence shows that Providential did not have many *Page 7 
assets in the bank when it transferred the property to the Kimpels. However, William did testify that Providential owned other assets which made it solvent. William clearly has some credibility problems, his testimony is self-serving and it is "convenient" that his briefcase containing any documentation of Providential's solvency was stolen, but this does not completely offset the fact that he has testified that Providential actually did own those assets at that time.
 {¶ 30} This is the type of credibility determination which is best left to the trier of fact. However, the trier of fact has not yet made this determination. Thus, we are not yet in a position to review this issue. Accordingly, this issue must be remanded back to the trial court so it can make this determination.
 1336.04(A)(1) {¶ 31} In order to prove that a transfer is fraudulent under 1336.04(A)(1), a creditor must show that the debtor possessed "actual intent to hinder, delay, or defraud any creditor of the debtor." "Actual intent" may be proven by circumstantial evidence and R.C. 1336.04(B) lists some of the factors to be used when determining whether the debtor had the requisite intent. Blood v. Nofzinger, 162 Ohio App.3d 545,2005-Ohio-3859, at ¶ 36.
 {¶ 32} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 33} "(1) Whether the transfer or obligation was to an insider;
 {¶ 34} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 35} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 36} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 37} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 38} "(6) Whether the debtor absconded; *Page 8 
 {¶ 39} "(7) Whether the debtor removed or concealed assets;
 {¶ 40} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 41} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 42} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 43} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor." R.C. 1336.04(B).
 {¶ 44} This list is, of course, not comprehensive, and courts must examine the particular facts and circumstances of each case when determining whether actual intent to hinder, delay, or defraud exists.Blood at 49. If the party alleging fraud is able to demonstrate a sufficient number of these "badges of fraud," the burden of proof shifts to defendant to prove that the transfer was not fraudulent. Baker SonsEquip. Co. v. GSO Equip. Leasing, Inc. (1993), 87 Ohio App.3d 644, 650. The defendant can do so by demonstrating that the transfer was made in good faith and he was paid a reasonably equivalent value. Id. at 650-651; R.C. 1336.08(A).
 {¶ 45} Esteco argues that as many as seven of these "badges of fraud" apply in this case and Esteco is correct that some of these do apply.
 {¶ 46} Esteco first argues that the transfer was made to an insider, a badge of fraud under R.C. 1336.04(B)(1). R.C. 1336.01(G)(2) defines that the following are insiders of corporations which are debtors:
 {¶ 47} "(a) A director of the debtor;
 {¶ 48} "(b) An officer of the debtor;
 {¶ 49} "(c) A person in control of the debtor;
 {¶ 50} "(d) A partnership in which the debtor is a general partner;
 {¶ 51} "(e) A general partner in a partnership described in division (G)(2)(d) of *Page 9 
this section;
 {¶ 52} "(f) A relative of a general partner, director, officer, or person in control of the debtor."
 {¶ 53} Contrary to the trial court's findings, both of the Kimpels are insiders of Providential. William was Providential's sole shareholder and was the person in control of Providential. R.C. 1336.01(G)(2)(c). Wendy is William's relative. R.C. 1336.01(G)(2)(f). Thus, the property was transferred to insiders of Providential and indicated fraud.
 {¶ 54} Esteco also argues that the property remained in the debtor's possession or control, a badge of fraud under R.C. 1336.04(B)(2). However, there is no indication that Providential retained any control over the property after its transfer.
 {¶ 55} Esteco next argues that Providential and the Kimpels did not disclose the transfer to Esteco, a badge of fraud under R.C.1336.04(B)(3). Although some may believe that proving that a deed was recorded proves that the transfer was not fraudulent, it appears that courts have found that a transfer is concealed if it is not disclosed to the creditor. For example, in Harrison v. Creviston, 8th Dist. No. 86732, 2006-Ohio-3964, the court of appeals held that this badge of fraud applied because the debtor "concealed from the [creditors] his conversion and subsequent transfer of their funds to [third parties]." Id. at ¶ 21.
 {¶ 56} This approach makes sense since a creditor, such as Esteco, may have no reason to believe that the transfer of real estate would be related to its loan to a debtor, such as Providential, especially when the loan was for a purpose unrelated to the purchase and transfer of the real estate. Thus, the fact that the deed was recorded does not indicate that the transfer was not fraudulent.
 {¶ 57} Esteco claims that the transfer was of substantially all of Providential's assets, a badge of fraud under R.C. 1336.04(B)(7). For the reasons given above, there are facts supporting such a conclusion, but there are also facts supporting an opposite conclusion. Thus, it is not appropriate for this court to conclude that this factor indicates fraud. We must allow the trial court to rule on this issue first. *Page 10 
 {¶ 58} Esteco next argues that the value received by Providential was not reasonably equivalent to the value of the asset transferred, a badge of fraud under R.C. 1336.04(B)(8). This is true. Providential received nothing for property which cost it more than $186,000.00. Moreover, Providential purchased the property only days before it was transferred, leaving little time for the value of the property to materially change. These facts are an indication of fraud.
 {¶ 59} Esteco maintains that Providential became insolvent soon after the transfer was made, a badge of fraud under R.C. 1336.04(B)(9). However, for the reasons given above this is a factual matter which the trial court has yet to rule upon. Therefore, it is inappropriate for this court to consider this issue at this time.
 {¶ 60} Finally, Esteco points to the fact that Providential bought and transferred this property soon after it loaned a substantial sum of money to Providential, a badge of fraud under R.C. 1336.04(B)(10). This is also an established fact. The transfer which is the subject of this case took place soon after Esteco loaned Providential $500,000.00. Thus, this is also an indication of fraud.
 {¶ 61} When examining all the facts and circumstances of this case, it is clear that there are at least three factors which indicate that the transfer was fraudulent. It was 1) made to insiders of Providential 2) without anything being given in return 3) soon after Esteco loaned a substantial sum to Providential. Furthermore, there are factual questions regarding Providential's financial health at the time of the transfer which could further indicate that the transfer was fraudulent.
 {¶ 62} In order for this case to be properly decided, the trial court must rule on the outstanding factual questions before we can say whether its decision is supported by the evidence. Accordingly, we must remand this issue back to the trial court so it can make the required determinations.
 Conclusion {¶ 63} In this case, the trial court erred by focusing on whether the transfer from the Kimpels to Wenkar was fraudulent, rather than looking to see whether the transfer from Providential to the Kimpels was fraudulent. The Kimpels, as the transferees from *Page 11 
Providential, are liable if that transfer was, in fact fraudulent. The trial court's findings of fact are insufficient to fully and finally resolve the dispute between the parties. Accordingly, the judgment of the trial court is reversed and this case is remanded so the trial court can properly apply the law to the facts of this case and determine whether the transfer from Providential to the Kimpels was fraudulent. Donofrio, J., concurs. Vukovich, J., concurs. *Page 1