[Cite as *Long v. Hutchinson*, 2025-Ohio-1520.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


Wendy Long

        Appellant/Cross-appellee

v.

Sharon E. Hutchinson, Successor Trustee
of the Marshall S. McClurg Declaration
of Trust, U/A/D 02/21/2017, et al.

        Appellee/Cross-appellant

Court of Appeals No.    L-23-1228
                      L-23-1235

Trial Court No.  CI0202202118


**DECISION AND JUDGMENT**

Decided:  April 29, 2025

* * * * *

Zachary J. Murry for appellant/cross-appellee.

Kevin J. Kenney, for appellee/cross-appellant.

* * * * *

**DUHART, J.**

**{¶ 1}** This consolidated appeal is before the court on appeals filed by appellant, Wendy Long, and by cross-appellant, Sharon E. Hutchinson, Successor Trustee of the Marshall S. McClurg Declaration of Trust, U/A/D 02/21/2017 (hereinafter "Hutchinson") from the judgment of the Lucas County Court of Common Pleas journalized September 15, 2023. For the reasons that follow, we affirm, in part, and reverse, in part.

**Hutchinson's Assignment of Error**

The lower court incorrectly applied R.C. 1336.09(A) in determining [Long]'s claim was not time-barred.

**Long's Assignment of Error**

The trial court committed reversible error by entering summary judgment in favor of [Hutchinson] where [Long] presented undisputed evidence of sufficient "badges of fraud" and the Court failed to conduct an appropriate Civ.R. 56 analysis.

**Factual Background**

{¶ 2} Long is the ex-wife of Marshall McClurg. To finalize their divorce, on October 5, 2015, Long and McClurg entered into a Consent Judgment Entry of Final Divorce ("consent judgment"). Relevant to this opinion, the consent judgment obligated McClurg to pay Long spousal support in varying amounts through July 31, 2024. In addition, the consent judgment provided that the court retained jurisdiction to terminate McClurg's spousal support obligation upon McClurg's death and the consent judgment ordered that "each party shall retain their Pacific life insurance policy, free and clear of any claim by the other party, except [McClurg] shall maintain insurance on his life in an amount equal to the total remaining amount of his spousal support obligation"; and ordered McClurg to "produce proof of existence of the life insurance policy upon [Long's] request" and to "provide notice to his insurance company that [Long] is to

2.

remain beneficiary on his existing life insurance policy after the termination of the parties' marriage."

{¶ 3} After the divorce, Long was provided proof of the life insurance policy, as well as assured "of the continued existence of the life insurance policy on several occasions in the years after the [consent j]udgment was entered."

{¶ 4} On February 21, 2017, McClurg created a trust. The Declaration of Trust stated that McClurg "hereby gift[s], transfer[s], convey[s] and /or assign[s] to himself as Trustee the property described in Schedule A," which was referred to as McClurg's "trust estate." The trust estate included two pieces of real estate that McClurg intended to transfer to the trust, all tangible personal property, his business (McClurg Environmental, Inc.), as well as certain IRA accounts, an investment account, and three life insurance policies, including a First Penn Pacific Life Policy, which McClurg intended to name the trust the beneficiary.

{¶ 5} McClurg passed away on December 8, 2021. Neither Long, nor McClurg's children, were made aware of McClurg's passing. Instead, efforts were made to prevent Long and McClurg's family from learning about his death. Hutchinson sent a text to someone on December 12, 2021, stating that McClurg wanted to be left alone, and texts were sent from McClurg's phone, apparently to his brother by him, on Christmas and New Year's Day. Long did not learn of McClurg's death until January 2022 when she did not receive her spousal support payments.

3.

{¶ 6} Long did not become aware that she was no longer the beneficiary on an insurance policy, as required by the consent judgment, until after January 2022.

**Procedural Background**

{¶ 7} On April 22, 2022, Long filed a complaint against Hutchinson, as successor trustee of the trust, and against Pamela Rose Auction Company ("auction company"). As it related to this appeal, the complaint alleged fraudulent conveyance against Hutchinson and requested that a constructive trust be imposed "upon all assets of the Defendant Trust." The auction company, and a second cause of action relating to the imposition of a constructive trust of auction proceeds, have been dismissed and are not relevant to this appeal.

{¶ 8} Hutchinson filed two motions for summary judgment in the trial court. In the first motion, Hutchinson claimed that the fraudulent conveyance claim was barred by the statute of limitations as Long was put on notice of the transfers when McClurg quitclaimed the two properties to the trust. In the second motion, she argued that Long did not have a claim for fraudulent conveyance.

{¶ 9} The trial court denied the first motion, finding that the statute of limitations had not expired, and granted the second motion.

{¶ 10} Both parties appealed to this court. On October 12, 2023, Long filed an appeal to this court in case number L-23-1228 of the trial court's granting of the second motion for summary judgment. On October 17, 2023, Hutchinson filed her own appeal,

4.

in case number L-23-1235, objecting to the trial court's denial of the first motion. These appeals have been consolidated.

## Standard of Review

{¶ 11} "We review a summary judgment decision on a de novo basis. Thus, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment." (Citations omitted.). *DeFoe v. Schoen Builders, LLC*, 2019-Ohio-2255, ¶ 24 (6th Dist.).

## Summary Judgment Standard

{¶ 12} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party.

{¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party meets this initial burden, the nonmoving party must set forth specific facts, by way of proper Civ.R. 56(C) evidence, showing a genuine issue for trial exists. *Id*. at 293.

5.

## Hutchinson's Assignment of Error - Statute of Limitations

{¶ 14} Hutchinson argues that the trial court misapplied the applicable statute of limitations set forth in R.C. 1336.09(A), and in doing so erred in concluding that Long's claim was not barred by the statute of limitations. Pursuant to R.C. 1336.09(A), a claim with respect to a fraudulent transfer under R.C. 1336.04(A)(1) is extinguished unless it is brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant."

{¶ 15} Here, the issue is when Long could have discovered the transfer. In the trial court, Hutchinson argued that McClurg's death, and the cancellation of the life insurance policy, were not "transfers" for purposes of R.C. 1336.04, and that the only applicable "transfers" were the transfers of assets into the trust, which were discoverable when quitclaim deeds transferring real property into the trust were filed on August 21, 2017.

{¶ 16} Long countered that she filed her claim within three months of discovery, and she could not have discovered her potential cause of action until January of 2022 when she learned of McClurg's death and that the life insurance policy had been transferred to the trust. She argued that Hutchinson attempted to conceal both the transfer and McClurg's death and that the quitclaim deeds did not put her on notice that the insurance policy had been transferred.

6.

{¶ 17} In response, Hutchinson asserted that Long's arguments contradicted her complaint, where she averred that the life insurance policy had been cancelled and instead sought to set aside the transfer of assets and requested a constructive trust on all proceeds of the auction and any real estate held in the trust.

*The Trial Court's Ruling*

{¶ 18} The trial court found that Long's complaint was filed within one year after the transfer was or reasonably should have been discovered, and overruled Hutchinson's first motion for summary judgment. The court agreed with Long that "the mere recording of Quitclaim Deeds of property solely owned by [McClurg] cannot be deemed to serve as constructive notice of a completely unrelated asset when [McClurg]'s spousal support obligation was to be paid by him monthly, and upon his death, through a life insurance policy in his name." The trial court further pointed to evidence that McClurg's death was "actively concealed" from Long and her children.

*Arguments on Appeal*

{¶ 19} Here, Hutchinson argues that whether Long had an interest in the property that was alleged to be fraudulently transferred is irrelevant when determining whether the statute of limitations established by R.C. 1336.09(A) expired because (1) the statute does not require it, and (2) in her complaint, Long is attempting to recover against the real estate and other property in the trust, which she does not have an interest in.

{¶ 20} Additionally, Hutchinson points out that, as Long's complaint alleged that the insurance policy was cancelled and only sought to set aside the transfer of the real

7.

estate and "other assets," only the transfer of the real estate and "other assets" should be considered when determining the statute of limitations. She maintains that Long did not amend her complaint, and instead of providing any evidence of a change in ownership of the insurance policy, merely contradicted her complaint in a "self-serving affidavit" in which she stated that she learned McClurg transferred/changed the beneficiary.

{¶ 21} Hutchinson also takes issue with the trial court's statement that "the mere recording of Quitclaim Deeds of property solely owned by [McClurg] cannot serve as constructive notice of a completely unrelated asset." She contends that, with this statement, it appears that the trial court improperly considered Long's knowledge of an asset, rather than a transfer, as the statute requires. Further, because the trial court found no evidence that the insurance policy had been transferred, Hutchinson asserts that Long's knowledge of McClurg's death and the change in beneficiary is irrelevant to the statute of limitation analysis.

{¶ 22} Hutchinson then again insists that Long had constructive notice of the transfer she is attempting in her complaint to set aside - the transfer of assets into the trust - when the deeds were filed.

*Whether Long had Constructive Notice*

{¶ 23} As an initial matter, we find that Hutchinson's arguments regarding the difference between Long's claims in her complaint and her claims in her briefs, as well as the issue regarding whether the insurance policy has been transferred or cancelled, do not

8.

affect our decision with regard to whether the statute of limitations has expired, and thus we will address these issues in the context of Long's assignment of error.

{¶ 24} Here, Hutchinson's only argument regarding what could have given Long constructive notice of *any* transfer is that the filing of the deeds gave Long constructive notice of her claim. Regardless of the status of the insurance policy, or what transfer Long is contending was fraudulent, we agree with the trial court that the filing of the deeds did not start the one-year clock. Long not only needed to know of the transfer, but of its "likely fraudulent nature before the one-year period began to run." *Estate of Cruz v. Peffley*, 2023-Ohio-2081, ¶ 63 (2d Dist.), citing *In re Fair Finance Co.*, 834 F.3d 651 (6th Cir. 2016). Long had no way of knowing of the alleged fraudulent nature of any transfer until she became aware that there was no longer any life insurance policy of which she was the beneficiary, covering McClurg's debt. The transfer of the deeds themselves was not sufficient.

{¶ 25} Therefore, we find Hutchinson's assignment of error not well-taken.

**Long's Assignment of Error – Fraudulent Conveyance Claim**

*Long's Claim*

{¶ 26} Prior to consideration of this assignment of error, we find it necessary to delineate Long's fraudulent conveyance claim. As discussed above, in Long's complaint she alleged that McClurg, individually and as trustee and settlor of the trust, cancelled the insurance policy and transferred all his assets into the trust with the intention of thwarting creditors, including Long. However, in response to Hutchinson's summary judgment

9.

motions, Long alleged that the insurance policy pledged as security for Long's judgment was "transferred to the Trust with the Trust identified as the beneficiary" of the policy and her arguments regarding which transfer was fraudulent, both in opposition to summary judgment and here on appeal were focused on the transfer of the policy. Further, when specifically asked during oral arguments to clarify what was the transfer that he was alleging was fraudulent, Long's attorney stated that the transfer was "the transfer of the beneficiary designation of the life insurance policy from [Long] who was the beneficiary as agreed in the parties' divorce agreement, transferring that policy and the beneficiary designation to the trust was a fraudulent conveyance." When a follow-up question was posed that "the policy wasn't transferred though, it was just a change in the beneficiary designation….the ownership didn't change of the policy, right?" he responded "that's correct, I mean, Mr. McClurg was still the life affixed to the policy, okay, when he passed, as opposed to my client being the beneficiary of the life insurance, the trust was the beneficiary of the life insurance policy…"

{¶ 27} As Long is no longer contending that the transfer of any assets, other than the life insurance beneficiary designation, was fraudulent, we limit our analysis here to determining whether Long has a justiciable claim for fraudulent transfer on the basis of the change in beneficiary.[1]

---

[1]  Hutchinson seems to contend that we cannot consider this as it differs from what Long pled in her complaint.  In a foreclosure action, the Ohio Supreme Court stated that "The issue of whether a particular conveyance is fraudulent could be raised in the pleadings, but it could also arise while an action is pending, or even after judgment is rendered, depending on the actions of the debtor and the knowledge of the creditor. No purpose would be served by formally requiring

10.

**{¶ 28}** Ohio's Uniform Fraudulent Transfer Act (UFTA) "creates a right of action for a creditor to set aside a fraudulent transfer of assets to the extent necessary to satisfy the creditor's claim." *Kingston of Miamisburg LLC v. Jeffery*, 2019-Ohio-1905 (2d Dist.). If a transfer is found to be fraudulent, R.C. 1336.07 provides for potential remedies, including avoidance of the transfer or obligation to the extent necessary to satisfy the claim of the creditor. If the transfer is voidable, then a creditor can obtain a judgment against the transferee "for the value of the asset transferred . . . or the amount necessary to satisfy the claim of the creditor or agency, whichever is less." R.C. 1336.08(B). Because the UFTA provides for remedies and judgments against the transferee, here alleged to be the trust, the transferee is a necessary party. *Brown Bark II, L.P. v. Coakley*, 2010-Ohio-3023, ¶ 18 (10th Dist.). "[T]ransferees are necessary parties to a claim for fraudulent conveyance not because their participation in the fraud must be

---

the creditor to amend the pleadings or file a supplemental complaint whenever the debtor makes, or the creditor discovers, during foreclosure proceedings, a transfer which appears to be a fraudulent conveyance." *Wagner v. Galipo*, 50 Ohio St.3d 194, 197 (1990). *See also Springfield v. Palco Invest. Co., Inc.,* 2013-Ohio-2348 (In a nonforeclosure case, the appellate court found that a trial court did not abuse its discretion when it found certain transfers were fraudulent conveyances despite the fact that those transfers were not pled in the complaint.). We find the Ohio Supreme Court's reasoning in *Wagner* applicable here. Moreover, we do not find this will seriously disadvantage Hutchinson. Although Long claimed in her complaint that the insurance policy was cancelled, Hutchinson was put on notice in Long's first cause of action that Long was claiming that McClurg transferred assets into the trust "with the actual intention of thwarting creditors" and Long currently is alleging the transfer of the beneficiary designation to the trust was fraudulent. Further, Hutchinson, as the trustee, is aware of what assets were transferred to the trust.

11.

proven, but because they hold an interest in the property that is the subject of the conveyance." *Commonwealth Land Title Ins. Co. v. Choice Title Agency, Inc.*, 2012-Ohio-2824, ¶ 11 (9th Dist.).  When, as here, the debtor retained no interest in the property, "commencing the action against the transferee-defendant is sufficient." *Brown Bark II* at ¶ 22 (finding that the estate of the debtor-transferor was not a necessary party to plaintiff's fraudulent transfer claim against the transferee).

{¶ 29} Under R.C. 1336.04(A)(1), a transfer is fraudulent as to a creditor if the debtor, here McClurg, made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  A transfer is defined as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance," and an asset is property of the debtor subject to certain exceptions not argued here.  R.C. 1336.01(B) and (L).

{¶ 30} When determining a debtor's "actual intent," R.C. 1336.04(B) sets forth the following, non-exclusive list of factors ("badges of fraud") to consider:

(1) Whether the transfer or obligation was to an insider;
(2) Whether the debtor retained possession or control of the property transferred after the transfer;
(3) Whether the transfer or obligation was disclosed or concealed;
(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
(5) Whether the transfer was of substantially all of the assets of the debtor;
(6) Whether the debtor absconded;
(7) Whether the debtor removed or concealed assets;

12.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

**{¶ 31}** Consideration of actual intent is not limited to these statutory factors but is to be determined based upon the facts and circumstances of each case. *Blood v. Nofzinger*, 2005-Ohio-3859, (6th Dist.) ¶ 49. "If the party alleging fraud is able to demonstrate a sufficient number of 'badges,' an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent." *Id.* "Once the burden has shifted, a defendant may rebut the presumption of fraud if he or she can demonstrate that the transfer was made in good faith and that 'reasonably equivalent value' was paid by the transferee." *Id.* at ¶ 50. "Where there is a lack of 'reasonably equivalent value' given in exchange, the defendant fails to carry the burden of proof, and intent to defraud the creditor is established." *Id.* The party asserting fraud must ultimately carry the final burden of proof. *Id.*

*Parties' Trial Court Arguments*

**{¶ 32}** In Hutchinson's motion for summary judgment, which was in response to the allegations in Long's complaint that the insurance policy had been cancelled, she argued that neither the cancellation or lapsing of the insurance policy, nor McClurg's death, was a transfer of property. She contended that the only transfer of property was

13.

the funding of the revocable trust, and, after analyzing the above badges of fraud, concluded that the funding of the trust did not support a claim for fraudulent transfer. She further asserted that Long was barred from recovering from the trust once McClurg died, citing to *Schofield v. Cleveland Trust Co.*, 135 Ohio St. 328 (1939).

{¶ 33} In response, Long contended that the creation of a revocable trust could serve as the basis for a fraudulent conveyance claim and that the maintenance and transfer of a life insurance policy could constitute an asset subject to the UFTA. Long also analyzed the badges of fraud as they related to the facts of this case and found "multiple badges of fraud" and that she had "set forth a valid claim … that the transfer of the life insurance policy constituted a fraudulent conveyance undertaken with the 'actual intent to hinder, delay, or defraud' Ms. Long and deny her the benefit of her Consent Judgment of Divorce."

{¶ 34} In her reply, Hutchinson pointed out the fact that Long's complaint had alleged that the insurance policy was cancelled and observed that Long's opposition to summary judgment instead claimed that the policy was transferred. While Hutchinson did not dispute that a life insurance policy is an asset, she insisted that there is no evidence that McClurg transferred ownership of the insurance policy.

*The Trial Court's Ruling*

{¶ 35} The trial court found that Long had only established three badges of fraud, the third, fifth, and seventh, and that this was not sufficient to establish McClurg's actual intent to hinder, delay or defraud Long when he conveyed the assets to the trust. The trial

14.

court also found no evidence that the life insurance policy was transferred, drawing attention to the averment in Long's complaint that the insurance policy had been cancelled.

*The Trial Court Erred in Granting Summary Judgment*

{¶ 36} On appeal, the parties agree that Long is a creditor under the UFTA and that an insurance policy is a potential asset under the UFTA. However, they disagree as to whether there is evidence that the insurance policy beneficiary was changed to the trust and whether there are sufficient badges of fraud. Additionally, Hutchinson maintains that "any retitling of assets to the Defendant trust in this case cannot be considered fraudulent as to creditors because the retitling did not affect the rights of any creditor including [Long]" as McClurg retained the right to revoke the trust.

{¶ 37} The first issue that must be addressed is whether there is evidence in the record that the life insurance policy was transferred to the trust. Hutchinson asserts that there is not, arguing that Long did not amend her complaint, but instead contradicted her previous allegations in a "self-serving affidavit," and that Long has provided no evidence as to the "existence, outcome or settlement of any life insurance policy." She also insists that there is no evidence that the life insurance policy referred to in the trust is the policy McClurg was ordered to maintain, and points to other language in the Consent Entry which states that "each party shall retain their Pacific life insurance policy, free and clear of any claim by the other party except [McClurg] shall maintain insurance on his life in

an amount equal to the total remaining amount of his spousal support obligation." Long asserts that she did provide evidence in the form of her affidavit and the trust.

{¶ 38} We find there to be evidence in the record sufficient to create a question of fact as to whether the beneficiary of the life insurance policy was changed from Long to the trust. Although Long's affidavit differs from her complaint, we note that the complaint is unverified, and thus, not sworn testimony. In her affidavit, Long made the following relevant statements:

12. Immediately after our divorce, I was provided with proof of the life insurance policy. ….
13. I was unaware that the life insurance policy that was to be maintained by Marshall McClurg had been terminated and/or had the beneficiary information changed until after January 2022, when a copy of the Declaration of Trust of Marshall S. McClurg was obtained by my and Mr. McClurg's children.
14. Among the life insurance policies for which the beneficiary was changed to the Trust, as identified on page 14, is the life insurance policy that Marshall McClurg had in effect at the time that the Judgment of Divorce was entered and for which I was to have been named as beneficiary.

{¶ 39} Also in the record is the trust itself, which on page 14 states, inter alia, that McClurg intends to name the trust as the beneficiary on certain listed accounts, including what appear to be three life insurance policies, one of which is listed as "First Penn Pacific Life Policy No. T105425144." The consent judgment is also in the record and states that "each party shall retain their Pacific life insurance policy, free and clear of any claim by the other party, except [McClurg] shall maintain insurance on his life in an amount equal to the total remaining amount of his spousal support." Although Hutchinson points to this language as evidence that the Pacific life insurance policy was

16.

not the policy McClurg was ordered to maintain for Long's benefit, we note that the language includes an exception for the spousal support obligation and additionally states, in that same paragraph, that McClurg "shall provide notice to his insurance company that [Long] is to remain beneficiary on his existing life insurance policy after the termination of the parties' marriage." Moreover, in her affidavit, Long states that she "was provided with proof of the life insurance policy." This statement is evidence that Long was aware of which life insurance policy was being maintained, and when combined with her statement that the life insurance referenced in the trust is the policy to which she was to have been named beneficiary, we find, for purposes of Hutchinson's summary judgment motion, Long has sufficiently created a genuine issue of material fact as to whether McClurg made the trust the beneficiary of the life insurance policy that he was obligated to maintain for Long's benefit.

{¶ 40} Hutchinson also maintains that the retitling of any assets into the trust cannot be considered fraudulent because the retitling did not affect Long's rights as a creditor - since the trust was revocable, the assets within the trust were reachable by all of McClurg's creditors. The assets did not become unreachable until McClurg died. She cites to *Schofield,* 135 Ohio St. 328 for this proposition. She therefore contends that it was McClurg's death, not any transfer of property, which changed Long's rights as a creditor. We do not find this to be the case here. The proceeds of the life insurance policy were not available to Long once McClurg changed the beneficiary of the policy and were not assets in the trust estate until McClurg's death. We do not find that

17.

*Schofield* supports a different conclusion as it is clearly distinguishable from the instant case. In *Schofield*, a creditor whose debt was incurred subsequent to the creation of a revocable trust sought to have a trust agreement revoked after the death of the settlor, the property held by the trust sold, and the proceeds applied to the payment of the settlor's debts, including the creditor's. The court there found that the "rights of creditors to reach the beneficial interest of the settlor - the interest he has retained for his own benefit including any returns or earnings from the trust property - and to force a revocation of the trust and subject the trust corpus to the payment of their claims, exists only during the lifetime of the settlor." *Id.* at 333. However, no fraud was asserted in that case, and the court specifically stated that "After the settlor's death, if the trust was in reality fraudulent as to creditors, a remedy would doubtless be available to the administrator or the creditors to subject the trust property to the satisfaction of the settlor's indebtedness. However, no fraud is asserted in the present case, nor is any discernible in the record before us." *Id*. at 334.

{¶ 41} Having determined that there is a genuine issue of material fact as to whether the trust was made the beneficiary of the life insurance policy that was to be maintained for Long's benefit, and that it is that transfer that is at issue here, we must now determine whether there is a question of fact as to whether McClurg made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." This requires consideration of the "badges of fraud" enumerated in R.C. 1336.04(B). The trial

18.

court found evidence of three badges of fraud but ultimately found three were not sufficient to survive summary judgment.

{¶ 42} Long argues that the trial court erred in finding three badges to not be sufficient, citing to *Blood*, 2005-Ohio-3859. Hutchinson disagrees with the trial court's finding of three badges of fraud, and contends that, even if three badges of fraud exist, the trial court still correctly granted her summary judgment.

{¶ 43} We first find the trial court erred in determining that three badges of fraud were not sufficient. We have previously stated that "as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent." *Blood* at ¶ 49. *Also see Reinbolt v. Kern,* 2013-Ohio-1359, ¶ 41 (6th Dist.), *UAP-Columbus JV326132 v. Young*, 2010-Ohio-485, ¶ 30 (10th Dist.), *Huntington Natl. Bank v. Winter*, 2011-Ohio-1751, ¶ 9 (1st Dist.). Further, in our independent review of the record, we also find at least three badges of fraud present. Therefore, we find a question of fact as to whether McClurg actually intended to defraud Long.

{¶ 44} For these reasons, we find there to be genuine issues of material fact regarding whether Long has stated a claim for fraudulent conveyance and therefore find Long's assignment of error well-taken.

### Conclusion

{¶ 45} Therefore, judgment of the Lucas County Common Pleas Court denying Hutchinson's motion for summary judgment on the issue of the statute of limitation is affirmed. However, the trial court's decision granting summary judgment to Hutchinson

19.

is reversed and remanded for proceedings consistent with this opinion.  Pursuant to

App.R. 24, Hutchinson is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                                         _____
                                                                         JUDGE

Myron C. Duhart, J.           

                                          _____
Charles E. Sulek, P.J.                                        JUDGE
CONCUR.

                                          _____
                                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.